Brown v. Lent.

---

## WILLIAM BROWN v. H. D. LENT.

A party may be responsible *civiliter* for a *tort*, by reason of his participation in the act occasioning the injury, either by direct personal interference, or by giving directions, or commands, or permission, which will make the act, though done by others, his own. But a mere intermediate agent between the master and the direct agent cannot be held constructively responsible for the acts of the latter.

In this case, which was an action to recover for an injury sustained by reason of alleged negligence on the part of the defendant in blasting rocks, it appeared, that one Barker contracted to do the stone work and masonry on certain sections of the Vermont Central Rail Road, and, with his men, commenced quarrying stone from a certain ledge; that he afterwards employed the defendant, as his general agent, to superintend all the work upon his contract; that, as such agent, the defendant gave to one Morris, who was the special agent of Barker, and had charge of the blasting on the ledge, general directions respecting the work upon the ledge; that Morris gave the directions relative to the particular blast, by which the injury complained of in this action was incurred; and that the defendant, at the time of the blast and previously, was in another part of the ledge, paying no attention to the preparation of the blast. And it was held, that the action should have been brought against Barker, or Morris, and that it could not be sustained against the defendant.

TRESPASS ON THE CASE, to recover for the loss of services of the plaintiff's daughter, and the plaintiff's expenses in taking care of her, occasioned by an injury received in consequence of the defend-

67

ant's want of care and prudence in blasting rocks near the highway in Northfield. Plea, the general issue, and trial by jury, June Term, 1847,—HALL, J., presiding.

On trial the plaintiff gave evidence tending to prove, that a number of men were engaged in blasting stone from a ledge near the highway in Northfield, July 9, 1846, for a culvert on the Vermont Central Rail Road, when a fragment of rock was thrown, by the blasting, about twenty three rods, and struck the plaintiff's daughter, as she was travelling in the highway, and that the defendant was at the ledge, superintending and giving directions respecting the blasting.

The defendant introduced testimony tending to prove, that one Barker had contracted with the Vermont Central Rail Road Company to do the stone work and masonry on certain sections of the road in that vicinity, and had purchased the right to quarry the stone from the ledge in May, 1846, and, with his men, commenced quarrying the stone from the same ; that in June, 1846, Barker employed the defendant, as his general agent, to superintend all the work on his contract ; that, as such agent, the defendant gave to one Morris, who was Barker's special agent, having the special charge and oversight of the blasting on the ledge, general directions respecting the work upon the ledge ; that Morris gave the directions relative to the blast, by which the plaintiff's daughter was injured ; and that the defendant, at the time of that blast and previous, was in another part of the ledge, about thirty rods distant, examining other stone, and paying no attention to the preparation of the blast.

The defendant requested the court to charge the jury, that if the defendant was the general agent of Barker, and the work at the ledge and the men there employed were under the special direction of Morris, and it was his duty to see the work done in a proper manner, then the defendant was not liable, if he did nothing more than direct the stone to be blown out.

But the court instructed the jury, that if they believed the defendant was the general superintendent of the work under Barker, and had the same power, that Barker had, to control and direct the manner in which the blasting should be conducted at the ledge, he would be liable in this action, (provided the other parts of the case were proved,) although it might have been the special duty of Mor-

ris, his subordinate agent, to direct the particular manner of the blast, and although the defendant had given no special directions respecting it;—but that, if they believed the defendant had not such power of control and direction of the blasting, and had given no special directions respecting it, he would not be liable.

The jury returned a verdict for the plaintiff. Exceptions by defendant.

*J. P. Kidder* and *E. Weston* for defendant.

We insist, that the action should have been brought against Barker, or against Morris, the special agent of Barker, who controlled the blasting, and by whose negligence the injury happened. The defendant was employed by Barker to direct what should be done. Morris was employed by Barker to conduct any blasting, which should be directed, and was not the agent, or servant, of the defendant. 3 Steph. N. P. 2340. 2 Ib. 1018. *Nicholson v. Mounsey,* 15 East 384. *Laugher v. Pointer,* 12 E. C. L. 311. *Randleson v. Murray,* 35 E. C. L. 342.

*J. L. Buck* for plaintiff.

The principal is accountable for the acts of his agent, and liable for his neglect; but this does not take away the liability of the agent. 1 Bl. Com. 330. 1 Chit. Pl. 72. When one gives directions to others, legally under his control, to do any act, he is liable for all damages resulting from his orders. The fact, that a foreman gave directions how, or where, to put in the particular blast, from which the injury resulted, cannot alter the case,—as the jury have found, that he acted under the defendant, and that the defendant had the same power of control over all the hands, that the principal had.

The opinion of the court was delivered by

DAVIS, J. In *torts* a party may be responsible *civiliter,* by reason of his participation in the act occasioning the injury, either by direct personal interference, or by giving directions, or commands, or permission, which will make the act, though done by others, his own, in conformity with the maxim, *ille qui facit per alium, facit per se;* or he may be liable constructively, by reason of his particular rela-

tion and connection with the agent, who commits the injury. In this last case, either the principal, the superior, or master, or the agent and servant, may be sued separately, or they may be sued jointly.

The facts, as briefly set forth in the bill of exceptions in this case, do not appear to us to warrant a recovery against the defendant, on the ground of any direct, personal agency in firing the blast, which did the injury to the plaintiff's daughter. Although he was at the quarry, some thirty rods distant, looking out stone, he had nothing to do with the particular preparation of this blast, nor had he any supervision over the time and manner of firing it, or of giving proper notice to such persons as might be passing in the highway. All this was the particular duty of Morris, who, as well as the defendant, was in the service and employment of Barker, the contractor, and whose special duty it was, to superintend and take charge of all the blasting at the ledge. The fact, that the defendant, as the general agent of the contractor in respect to all the work within the limits of his contract, gave general directions to Morris respecting the work to be done at the ledge, does not in any way connect him with the particular negligence, or carelessness, whatever it was, which the verdict finds caused the injury; unless we assume, from the vicinity of the ledge to the highway, the number of travellers upon the latter, or other circumstances, that operations of this kind could not be carried on there, however carefully and prudently, without danger to the persons of those thus passing. In such case negligence might be predicated of the mere act of carrying on blasting there at all; and consequently the giving directions to do so, however general, would directly connect the defendant with the mischief. We see no grounds for assuming this. Although we are not informed of the precise nature of the negligence, which was relied upon on trial, there are no facts disclosed, which warrant the conclusion, that, had the general directions given by the defendant been carried into effect by Morris, and the hands under him, with all practicable precautions, the injury would have occurred.

It follows, then, if the defendant is liable at all, it must be by reason of his position as the general agent of Barker, or of the Rail Road Company, in which capacity he exercised a general supervis-

ion over all the operations carried on under his control, including those at the ledge.

An examination of the principal authorities on this subject leaves very little room for doubt, that the action was improperly brought against this defendant. Barker, the contractor, in whose service the defendant was employed, as well as all other persons engaged about the ledge, may be, perhaps, responsible, as the ultimate master, the first originator and mover of all operations there; and so may Morris, and those immediately under his control, by reason of their direct participation in the injurious act; but neither principle nor·authority will warrant the holding a mere middle man, an intermediate agent between the master and the direct agent, constructively responsible for the acts of the latter.

Perhaps the question is of sufficient practical importance, to justify a reference to the leading authorities. In *Stone* v. *Cartwright*, 6 D. & E. 410, the defendant was the agent and manager of a coal mine, owned by one Ward, a minor, having been appointed by the court of chancery, and was declared against for negligently and carelessly carrying on operations at the mine, so that the plaintiff's dwelling house, situated above the mine, was rent, sunk and cracked, &c. It was held, that he was not liable; Ld. KENYON observing, that he had ever understood, that the action must be brought, either against the person committing the injury, or against the owner, for whom the act was done. LAWRENCE, J., said, if there had been evidence, that the defendant particularly ordered those acts to be done, from which the mischief ensued, the case would have been different. The case of *Littledale* v. *Earl of Londsdale*, tried in King's Bench, heard in Error in Exchequer Chamber, 2 H. Bl. 267, was, in its main features, like the preceding, except that it was brought and sustained against the owner of the mine.

In *Bush* v. *Steinman*, 1 B. & P. 404, we have a remarkable case of successive intermediate agents and contractors, all of whom were passed over, and a suit instituted against the owner of a house, which he had never occupied, for the injury sustained by the plaintiff, in being overturned in a chaise, by means of a quantity of lime placed in the road near the house, by a person engaged in making repairs on the house. It seems, the owner had contracted with a surveyor to perform the whole work for a stipulated price; the latter contracted

with a carpenter to do the whole; and the carpenter employed a bricklayer under him; and the latter again purchased lime of a limeburner, whose servant placed the lime in the road. The action was held to be properly brought against the owner of the house, although Eyre, Ch. J., said, that, at the trial below, he had great doubts, whether the defendant was liable, being so far removed from the real author of the nuisance; but those doubts finally gave way, and he concurred with the other Judges of the Common Pleas. He declared his satisfaction with the decisions in *Stone* v. *Cartwright* and *Littledale* v. *Londsdale.*

At *Nisi Prius* Lord Ellenborough had no doubt, that an action on the case could be sustained against an incorporated company, for injuries to a stage driver, whose coach was overturned and his leg broken, by means of an excavation and rubbish in a public street, the work of men employed by certain pipelayers, who had contracted with the company to lay down water pipes. *Matthews* v. *West London Water Works Co.*, 3 Camp. 403. See *Sly* v. *Edgley*, 6 Esp. R. 6. Some years later, in 1826, a case occurred, in which the Judges of the Court of King's Bench were equally divided, in consequence of which the case was argued before all the judges at Serjeant's Inn; but the judges of the other courts being no better agreed, it was finally determined against the plaintiff in King's Bench, upon an equal division. I refer to the case of *Laugher* v. *Pointer*, 5 B. & C. 547. The defendant was the owner of a carriage, and hired of one Bryant, a stable keeper, a pair of horses for a day,—Bryant sending with them a driver in his service, but who received no wages, depending wholly on gratuities from those who might have occasion for his services. The defendant paid him for the day. By the carelessness of this man the plaintiff's horse was run against and injured. The Chief Justice, Ld. Tenterden, and Littledale, J., thought the action could not be sustained,—believing that the driver could not properly be considered as the servant of the defendant. Holroyd J., and Bailey, J., were of a different opinion,—believing, that, for the time, the driver was to be considered as the defendant's servant, for whose acts he was responsible. Elaborate opinions were delivered by the four judges. There is, it will be perceived on examining these opinions, no radical difference in respect tot he broad principles of law, which should govern cases of that

kind. All agreed, that the master is responsible for the negligence of his servant,—all expresssed their concurrence in the cases above cited; but they differed as to whether, in point of fact, Pointer, or Bryant, was master.

In *Randleson* v. *Murray et al.*, 8 Ad. & El. 109, the defendants employed a porter, and the latter a carter, to remove barrels of flour from the defendant's ware house; and in doing so one barrel, by reason of defective tackle, fell upon the plaintiff and injured him. The defendants were held liable, on the ground that both the porter ond carter were their servants. Where the purchaser of a bullock hired a drover to drive it out of London to the owner's slaughter house, and the drover sent his boy for that purpose, but, through his carelessness, the bullock rushed into the plaintiff's premises, the owner was held not responsible for the misconduct of the boy, and, as COLERIDGE, J., thought, would not have been liable, had the drover attended to the matter himself,—they not being regarded as the defendant's servants. It is perhaps material to consider, that certain by-laws of the city required none, but licensed drovers, to be employed in such business. *Milligan* v. *Wedge*, 12 Ad. & El. 737.

The particular question, which, in effect, was left undecided in *Laugher* v. *Pointer*, was recently revived, and again discussed in the Court of Exchequer,—*Quarman* v. *Burnett et al.*, 6 Mees & Welsb. 499,—under a state of facts substantially similar. The whole court adopted the opinion of the Chief Justice and of LITTLEDALE, J., as the true doctrine. Baron PARKE, in delivering the opinion of the court, adverts to certain circumstances, which were relied upon, as distinguishing this case from the one in King's Bench,—such as the fact, that the driver, though in the regular service of the stable-keeper, under wages, was often employed by the defendants, sometimes for a week or two together, to go into the country, and even had a livery provided for him, when in their service, and was paid a stipulated compensation per day,—but was of opinion, that they did not materially change the aspect of the case. A still later case in the same court, *Rapson* v. *Cubitt*, 9 Mees & Welsb. 710, is a very direct authority for the decision we now make. The defendant, a builder, was employed by the committee of a certain club to make alterations and repairs in their club house. He made a sub-contract with one Bland, a gas fitter, to execute that portion of the work re-

lating to the gas fittings. In doing this work, Bland, or some of his men, omitted to turn off the gas from a certain pipe, by reason of which a large quantity escaped and exploded, seriously injuring the plaintiff and his wife. The whole court held, that the defendant was not liable, he not standing in the relation of master to Bland. There was assuredly more reason in that case for considering Cubitt responsible for the carelessness of Bland, than here in holding Lent accountable for the acts of Morris and his men; since in the former the sub agent was appointed, or contracted with, by the party sued; in the latter he was not. The doctrine of the case of *Quarman* v. *Burnett*, decided two years before, in 1840, was fully confirmed.

We are all satisfied, that the instructions given by the county court to the jury were erroneous. The judgment of that court is therefore reversed, and a new trial granted.