## W. H. MILLER v. H. BROWARSKY.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued October 30, 1889—Decided November 11, 1889.

(*a*) The plaintiff, in trover, purchased whiskey in barrels from a distiller, taking a bill of sale therefor, but leaving the whiskey to remain in the distiller's bonded warehouse, the tax thereon being unpaid.

(*b*) Subsequently, the distiller sold the same whiskey, giving warehouse

Referee's Report.

receipts according to the custom of the trade, to the defendant, who was without knowledge of the sale to the plaintiff, and who paid the tax and withdrew the whiskey.

1. In such case, the plaintiff having by his laches put it in the power of the distiller to sell the whiskey a second time to the defendant, a purchaser in good faith, the latter had acquired a good title thereto.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 44 October Term 1889, Sup. Ct.; court below, No. 517 January Term 1887, C. P. No. 2.

On December 24, 1886, William H. Miller brought trover against Hyman Browarsky, for certain whiskey in the possession of the defendant. The defendant pleaded, not guilty.

On October 6, 1887, by agreement of parties, the cause was submitted to *Mr. R. B. Petty*, as referee, under the provisions of the act of May 14, 1874, P. L. 166, who, on August 3, 1888, filed his report, which after stating the evidence, proceeded:

From the foregoing statement of the evidence, the referee finds the following to be the facts of the case:

1. George W. Jones in his lifetime was the owner of a certain distillery and bonded warehouse situate at Brownsville, Fayette county, Pa., which he operated up to the time of his death in March, 1886.

The plaintiff, W. H. Miller, resided at Brownsville. In March, 1883, he bought from Jones the whiskey in dispute, which was in the bonded warehouse, and took as evidence of title a receipted bill as follows:

\*      \*      \*      \*      \*      \*      \*      \*

Miller permitted the whiskey now in suit to remain in the bonded warehouse and made no demand for its withdrawal until some time after Jones's death, to wit, in April, 1886, a period of more than three years after the whiskey was bonded and after the sale to him. After the whiskey in dispute was manufactured, Jones hypothecated it at Pittsburgh for grain. By the custom of the trade, whiskey in bond is sold or hypothecated by the execution and delivery of certificates, called on the face warehouse receipts; containing, inter alia, the serial numbers of the barrels, the date when bonded, and the gauge of

the contents thereof, attested by a U. S. gauger; and such certificates pass from hand to hand by indorsement. No other mode of sale and transfer of whiskey in bond is known to the trade. The whiskey was hypothecated by Jones to Elwood & Co., by the delivery to them of such certificates.

2. The defendant, Hyman Browarsky, is and has been a wholesale liquor dealer in the city of Pittsburgh for upwards of eight years past. In March, 1885, said Jones, with whom defendant had had large dealings, came to defendant's place of business and informed him that he had some whiskey hypothecated with Elwood & Co., grain dealers of said city, for grain, and that he wished to sell it. Thereupon defendant purchased from him 45 barrels of whiskey, 21 barrels of which are the subject of this controversy, and are a part of the same sold by Jones to plaintiff, Miller, in March, 1883. The defendant paid a full consideration therefor, and as payments were made by him, the money or checks were turned over to Elwood & Co., in payment of the debt for which the whiskey was pledged, and from time to time as payments were made, by direction of Jones, Elwood & Co., delivered to defendant the hypothecated certificates for the whiskey in suit. The said certificates were each for five barrels and were in the form recognized and used by the trade.

The defendant had no knowledge or notice until after the death of Jones, that plaintiff had any interest in the whiskey, but on the contrary fully believed that Jones was the legal owner thereof, when sold to him and paid for and withdrawn by him. The plaintiff took no steps to give notice of his ownership, by notifying the government storekeeper, or the collector of internal revenue, of his purchase, or otherwise. The warehouse was bonded in the name of Jones, and under the custom, the distiller alone could withdraw whiskey deposited therein.

The defendant, or his vendees, from time to time presented the certificates to Jones and furnished him money to pay the government tax, and Jones then paid the tax and obtained withdrawal orders from the collector, and the storekeeper delivered the whiskey to defendant or his vendees.

After Jones's death, and without previous demand, plaintiff brought this action.

3. Defendant was a bona fide purchaser for value without notice, and has been guilty of no laches or want of good faith.

Referee's Report.

The acts of Congress, which were referred to by both parties, prescribe fully the manner in which bonded warehouses shall be kept, and spirits stored therein and withdrawn therefrom. These regulations are in general, as follows :

The distiller must provide a warehouse, which is declared to be a bonded warehouse of the United States, under the direction and control of the collector of the district, and in charge of a storekeeper assigned thereto by the commissioner of internal revenue.

The distillery warehouse shall be in the joint custody of the storekeeper and the distiller. It shall be kept securely locked, and at no time be opened unless in the presence of the storekeeper.

When distilled spirits are entered in the warehouse, they shall be drawn into casks and shall thereupon be gauged, proved and marked by a gauger, and immediately removed into the warehouse and stamped with a stamp showing the serial numbers of the cask, the name of the distiller, date of receipt into warehouse and number of proof gallons. The numbers begin with one, and packages are numbered in progressive order as the same are received from the distillery.

The government tax must be paid by the distiller, owner or person having possession, upon removal from the distillery warehouse.

The distiller upon entering spirits must give bond for the payment of the tax, and the law further provides that the tax shall be a lien on the spirits distilled, the distillery, land, etc.

Spirits must be removed and tax paid within three years from the entry, and they must be removed immediately upon payment of tax.

Upon payment of tax to the collector, the latter shall issue his order to the storekeeper for delivery, and the gauger shall then place upon the cask a stamp showing that tax has been paid, the serial numbers of the cask, the name of the person by whom the tax was paid, and the person to whom and the place where it is to be delivered.

Storekeepers are required to keep a warehouse book and enter amount and description of packages received, and delivered, the date of delivery, and to whom delivered, and to furnish daily statements to the collector, of all articles received and delivered.

Upon these facts the plaintiff claims title by virtue of his prior purchase from Jones, and if he is entitled to recover, judgment should be given in his favor for $470.84, with interest from July 1, 1885.

The defendant claims title under his purchase and delivery to him and contends that the plaintiff cannot recover in this action because:

1. To sustain the action of trover there must be a previous demand.

2. When the same thing is sold to two different persons by contracts equally valid, and the second vendee is without notice of first sale, he who first obtains possession is entitled to the property.

3. The plaintiff was guilty of laches in not demanding and receiving from Jones, certificates in the form used by the trade in the sale and transfer of whiskey in bond, and in not giving notice to the collector of internal revenue, or to the government storekeeper, of his purchase; and by reason of such laches, Jones was enabled to make the sale to defendant, and therefore plaintiff cannot recover.

As to the first ground of defence, the testimony shows that prior to the bringing of suit defendant had asserted ownership and actually converted the goods by disposing of them to others. In such a case a demand is not necessary: Moak's Underhill on Torts, 564-568; Bigelow on Torts, 190; Carey v. Bright, 58 Pa. 70, 83; Waring v. Penna. R. Co., 76 Pa. 491.

—Considering Shaw v. Levy, 17 S. & R. 101; Winslow v. Leonard, 24 Pa. 18; Davis v. Bigler, 62 Pa. 246; Worman v. Kramer, 73 Pa. 385; Keil v. Harris, 5 Cent. R. 865; Pellman v. Hart, 1 Pa. 263; Cover v. Black, 1 Pa. 493; Reed's App., 13 Pa. 476; Ensign v. Hoffield, 18 W. N. 105; Depeyster v. Gould, 2 Green Ch. 474 (29 Am. Dec. 723); Root v. French, 13 Wend. 570 (28 Am. Dec. 482); the referee proceeded:

The protection afforded to a second purchaser is upon the principle, that if the purchaser, by laches, has put it in the power of the vendor to commit a fraud upon innocent third persons, in a contest between them, he must bear the loss who has been the cause of it. It was upon this ground that the cases of Shaw v. Levy and Davis v. Bigler were decided, and the same rule was applied in Gallagher v. Caldwell, 22 Pa.

300, when the second assignee of a judgment was preferred to the first, because the assignment was not recorded. In Root v. French, 13 Wend. 570 (28 Am. Dec. 482), the court say: " The vendor who has been defrauded of his property, and the bona fide purchaser from the fraudulent vendee, are both innocent parties; and when one of two innocent parties must suffer from the fraud of a third, the loss should fall on him who has enabled such third person to commit the fraud. . . . . The bona fide purchaser is protected on the principle just stated, that when one of two innocent persons must suffer from the fraud of a third, he shall suffer who by his indiscretion has enabled such third person to commit the fraud." The rule is, that unless there has been supineness on the other side, negligence in the enjoyment of property or the exercise of a right, is the cause of redress in equity and at law: Fisher v. Knox, 13 Pa. 622; Campbell's App., 29 Pa. 401; Fraley's App., 76 Pa. 42.

The question then to be determined is, was Miller guilty of laches and thus enabled Jones to effect the second sale?

As has already been stated, whiskey in bond cannot be actually delivered. It cannot be removed from the warehouse until the tax is paid, but under the law the tax must be paid and the whiskey withdrawn within three years from its entry. As is well known, the traffic in bonded whiskey is a very large one and great quantities of bonded whiskey are sold. To hold that these sales would be invalid without actual delivery, would be to hold that a purchaser of bonded whiskey is entirely at the mercy of the distiller and must trust entirely to his honesty; on the other hand, to hold that all that is necessary is to make a bill of sale, leaves it in the power of a dishonest distiller to sell the same whiskey to half a dozen purchasers, and thus defraud all but the first purchaser. Therefore, the general rule of equity should be applied, and the purchaser required to do all that can reasonably be done to give notice of his title and prevent a second sale.

The testimony shows that the trade has adopted a system regulating the transfer of bonded whiskey by means of certificates called warehouse receipts. These certificates in addition to the certificates of the distiller that he has sold the whiskey, contain a statement signed by the U. S. gauger showing the

numbers and dimensions of the barrels, the gauge and date of entry. It does not clearly appear that but one certificate of this character is signed by the gauger, but as the only purpose of these certificates is the sale and transfer of the title, the gauger by issuing more than one would be a party to a fraud. It is therefore probable that the gauger will sign but one certificate for each lot of whiskey. And the fact that when Browarsky required from Jones the warehouse receipts for the whiskey, they had to be released by Elwood & Co., to whom they were pledged, goes to show that a second certificate could not be obtained from the gauger. It would only be reasonable then that Miller should have required from Jones the usual form of delivery by transfer of the so-called warehouse receipts. If this had been done, it would have been out of the power of Jones to have made the second sale.

Further than this; there is no reason why notice of the sale should not be given to the collector of revenue and the storekeeper. The whiskey under the law, is in the joint possession of the storekeeper and the distiller. It may be removed at any time upon the payment of the tax, and although the custom is for the distiller to obtain the withdrawal order, the law recognizes the right of any owner to withdraw whiskey on payment of the tax ; and this being so, delivery certainly would not have been made to the distiller, in the face of notice that the ownership was in some one else, and the defendant would have discovered the fraud of Jones upon presentation of the first certificate.

Miller neglected all these precautions, and although under the law, tax must be paid within three years from entry, not until the death of Jones, which occurred three years after his purchase, did he seek to obtain the whiskey. The defendant, on the other hand, required from Jones the usual evidence of title. As he purchased lots of whiskey, he promptly paid the tax and withdrew the whiskey.

[The referee is of the opinion that the plaintiff was guilty of laches; that his laches enabled Jones to make the second sale to defendant, and that therefore judgment should be entered in favor of defendant. Judgment is accordingly entered in favor of defendant, with costs of suit; exception to plaintiff.[1]]

Opinion of the Court.

Judgment having been entered, the plaintiff took this appeal, assigning as error:

1. The finding and judgment embraced in [ ][1]

*Mr. A. M. Brown* (with him *Mr. W. G. Guiler*), for the appellant.

Counsel cited: Sections 3271, 3273, 3274, R. S. U. S.; McCombie v. Davies, 6 East 538; Keil v. Harris, 5 Cent. R. 865; Devereux v. Barclay, 2 B. & Ald. 702; Pease v. Smith, 61 N. Y. 477; Riley v. Water Power Co., 11 Cush. 11; Ganly v. Ledwidge, I. R. 18 C. P. 33; Bigelow on Torts, § 3, p. 190; Moak's Underhill on Torts, 568.

*Mr. J. M. Stoner* (with him *Mr. A. B. Force*), for the appellee.

Counsel cited: Rice v. Rice, 2 Drew. 73; Keil v. Harris, 5 Cent. R. 865; Pellman v. Hart, 1 Pa. 266; Shaw v. Levy, 17 S. & R. 101.

PER CURIAM:

This case does not require extended discussion. The learned referee has given sufficient reasons for his findings. It is clear that but for plaintiff's laches Jones would not have been able to sell the whiskey the second time; and the rule is well established that, where one of two innocent persons must suffer a loss, such loss must be borne by the person whose neglect was the occasion of it. The plaintiff left the whiskey absolutely under the control of Jones, when, by reasonable caution, he could have placed it beyond his power to re-sell it. The defendant was a good-faith purchaser, without any knowledge of the prior purchase and of the fraud of Jones. Having so purchased the whiskey, paid the tax, and taken it out of bond, we see no reason why he did not get a good title.

Judgment affirmed.