MUNROE et al. v. PHILADELPHIA WAREHOUSE CO.

(Circuit Court, E. D. Pennsylvania. May 16, 1896.)

1. ASSIGNABILITY OF BILLS OF LADING—STATUTORY PROVISIONS.
   The Pennsylvania act of September 24, 1866, declaring bills of lading negotiable, is not limited merely to bills representing goods in transit to warehousemen or persons in like business. Shaw v. Railroad Co., 101 U. S. 557, followed.

2. SAME—INDEPENDENTLY OF STATUTE.
   Plaintiffs, in Paris, advanced money upon goods in transit to this country, taking a trust receipt, whereby the consignees agreed to hold the merchandise on storage as plaintiffs' property until the loan was repaid or otherwise provided for. Plaintiffs thereafter voluntarily put the bills of lading, indorsed in blank, into the hands of persons who obtained advances on them from defendants, in Philadelphia, who were ignorant of plaintiffs' claim. Held that, independently of statute, the bills of lading were so far negotiable that defendants were entitled to hold the goods as against the claim of plaintiffs.

The plaintiffs issued a writ of replevin against E. J. Lavino and Henry J. Lavino, trading as E. J. Lavino & Co., and L. Rubelli, citizens of the state of Pennsylvania, and J. C. Brown, master of the ship Inchulva, for 15 bales of wool, 1,350 bales of licorice root, 10 cases of opium, and 2 boxes of soap. The Philadelphia Warehouse Company intervened, and claimed the goods as sole owner, setting up the following facts: The goods in question were shipped from Smyrna, Turkey, to Philadelphia, by the ship Inchulva, to A.

Lavino & Co., upon bills of lading, consular certificates, and invoices, in the name of the said firm. The said bills and certificates, indorsed in blank, were then brought to the Philadelphia Warehouse Company, by E. J. Lavino & Co., and proffered as collateral for a loan. The said company thereupon loaned to the firm of E. J. Lavino & Co. the sum of $9,860, the goods being in transit. It was proven upon the trial that the intervening defendant had no knowledge of any other claim that its own, and received the said bills of lading, etc., without notice, etc. The plaintiffs, being bankers in New York and Paris, claimed the goods through a "trust receipt" signed by E. J. Lavino & Co., in consideration of money advanced by their Paris house upon the merchandise. The receipt stated that "the said Lavino & Co. agreed to hold the merchandise on storage as the property of plaintiffs, in trust, until the acceptance by the Paris house given as the purchase money of said goods under a credit issued to the said Lavino & Co. shall have been paid or satisfactorily provided for." The goods were also to be insured against fire in favor of plaintiffs. The intent of the trust receipt was stated to be "to protect and preserve unimpaired the title of the said John Munroe & Co. to said merchandise." The plaintiffs had put the indorsed bills of lading into the hands of E. J. Lavino & Co. Upon these facts, the court directed the jury to render a verdict for defendants.

A. H. Wintersteen and Charles E. Rushmore, for the rule.

Bills of lading for goods in transit are merely representative of the goods, and, irrespective of the statutes, the rights of the parties having possession of such instruments are governed by the same rules of law. Transportation Co. v. Steele, 70 Pa. St. 188. The factor's act of 1834, in Pennsylvania, and the warehousemen's act of 1866, do not alter the common-law rule in such a way as to prevent its conclusions from governing this case. Macky v. Dillinger, 73 Pa. St. 85; Bucher v. Com., 103 Pa. St. 528; Shaw v. Railroad Co., 101 U. S. 557.

Jos. De F. Jenkin, contra.

ACHESON, Circuit Judge. I am not able to assent to the proposition that only bills of lading representing goods in transit to warehousemen or persons in like business are negotiable, under the Pennsylvania act of September 24, 1866. The act, I think, has a wider application, and such was the view taken by the court in Shaw v. Railroad Co., 101 U. S. 557, 565.

But, aside altogether from this statute, the bills of lading in question were so far negotiable that, by the indorsement thereof by the consignees, the title to the goods was transferable to a bona fide purchaser or pledgee for value.

In the case of Conard v. Insurance Co., 1 Pet. 386, 445, the supreme court said:

"By the well-settled principles of commercial law, the consignee is thus constituted the authorized agent of the owner, whoever he may be, to receive the goods; and by his indorsement of the bill of lading to a bona fide purchaser, for a valuable consideration, without notice of any adverse interest, the latter becomes, as against all the world, the owner of the goods. This is the result of the principle that bills of lading are transferable by indorsement, and thus may pass the property. It matters not whether the consignee in

such case be the buyer of the goods, or the factor or agent of the owner. His transfer in such a case is equally capable of divesting the property of the owner, and vesting it in the indorsee of the bill of lading."

Now, here, by the terms of the bills of lading, the goods were deliverable at Philadelphia, to the order of the shippers, A. Lavino & Co. The plaintiffs voluntarily put the bills of lading, indorsed in blank by A. Lavino & Co., into the hands of E. J. Lavino & Co., of Philadelphia, and thus clothed the latter with the apparent absolute ownership of the goods, and enabled them to obtain advances upon the bills of lading from the defendant.

The rulings of the court at the trial of the present case were in harmony with the recent decision of the circuit court of appeals for the First circuit in the case of Pollard v. Reardon, 13 C. C. A. 175, 65 Fed. 848, 852. It was there well said by Judge Putnam:

"There is every reason found in the law of equitable estoppel and in sound public policy for holding, and no injustice is involved in holding, that, if one of two must suffer, it should be he who voluntarily puts out of his hands an assignable bill of lading, rather than he who innocently advances value thereon."

The principle that, where one of two persons equally innocent of actual fraud must suffer from the tortious act of a third, he who gave the wrongdoer the means of perpetrating the wrong must bear the consequences of the act, has often been enforced by the courts against a party who, by documentary evidence of title or otherwise, has clothed his agent or any other person with the apparent absolute ownership of personal property, and thus enabled him to deal with it as if he were the owner. Steamboat Co. v. Van Pelt's Adm'r, 2 Black, 372; Pennsylvania R. Co.'s Appeal, 86 Pa. St. 80; Robertson v. Hay, 91 Pa. St. 242; Miller v. Browarsky, 130 Pa. St. 372, 18 Atl. 643. The motion for a new trial is denied.