BROWN & SONS LUMBER CO. *et al. v.* SESSLER.

(*Nashville.* December Term, 1913.)

1. **MASTER AND SERVANT. Injuries to third person. Death. Master's liability.**

Defendant lumber company maintained a sawmill in connection with which was a chute by which wood for fuel converted from slabs was taken from the saw. The wood was sold to draymen who loaded their wagons from the pile, for the protection of whom the lumber company had adopted a custom of requiring the employees who took out the large pieces to give a warning signal if by chance a large piece should go past him into the chute, and be liable to fall on the pile. While decedent, a customer, was loading his wagon at the pile, the employee in charge of the chute temporarily left it to warm himself, and, while absent, a large piece of wood passed over the chute without warning, and struck decedent, and caused injuries from which he died. *Held*, that decedent, being at the pile by the lumber company's invitation, was entitled to rely on the giving of a warning signal, and that defendant was therefore liable for his death resulting from a failure on the part of the employee to comply with the custom. (*Post, pp.* 667, 668.)

Cases cited and approved: Maness v. Clinchfield Coal Corporation, 128 Tenn., 143; Rosenbaum v. Shoffner, 98 Tenn., 624; Bennett v. Louisville, etc., R. Co., 102 U. S., 577; Sesler v. Coal Co., 51 W. Va., 322.

2. **MASTER AND SERVANT. Injuries to third person. Superintendent. Liability.**

Where the superintendent of a lumber company had no personal interest in the business, and was not present when decedent, a customer, was struck and killed through the negligence of a laborer employed by the company, and there was no claim that the superintendent was negligent in employing such laborer or retaining him in the service, the superintendent was not liable. (*Post, pp.* 669, 670, 671, 672.)

Lumber Co. v. Sessler.

Cases cited and distinguished: Stone v. Cartwright, 6 Term Rep. (Durnf. & E.), 411; Brown v. Lent, 20 Vt., 529; Bileu v. Paisley, 18 Ore., 47; Thurman v. Pittsburg, etc., Copper Co., 41 Mont., 141.

Cases cited and approved: Ellis v. Southern Railway Co., 72 S. C., 465; Railroad v. Blair, 1 Tenn. Chy., 351, 63 Tenn., 407.

3. APPEAL AND ERROR. Joint judgment. Partial invalidity. Where, in an action for death against a lumber company and its superintendent, a joint judgment against both was not sustainable as against the superintendent, but was valid as against the lumber company, the latter was not entitled to have it set aside as to it. (*Post, pp.* 673, 674.)

Case cited and distinguished: Bentley v. Hurxthal, 40 Tenn., 378.

Cases cited and approved: Street Railway v. Gore, 106 Tenn., 390; Sparrow v. Bromage, 83 Conn. 27; Loveman v. Bayless, 128 Tenn., 307.

---

FROM DIXON.

---

APPEAL from Circuit Court, Dickson County.—W. L. COOK, Judge.

R. L. LEECH, JNO. J. VERTREES, and W. T. KANNARD, for appellants.

JNO. B. DANIEL and J. A. CLEMENT, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

The plaintiff below, Susie V. Sessler, sued to recover damages for the wrongful death of her husband,

joining as defendants the lumber company and its manager, John M. Smith, and recovered judgment against both. On appeal to the court of civil appeals this judgment was affirmed, and a petition for *certiorari* has been filed to have reviewed in this court the judgment of affirmance.

The company operated a sawmill, and as a part of it a chute was in use to carry away from the mill, proper, wood for fuel converted from slabs. This chute was 160 feet long, and inclined from the saws upward, terminating at a distance of about 28 feet above the ground. The wood of various sizes was placed in the chute and conveyed by an endless revolving chain, and the smaller sizes were dumped into a pile that assumed a conelike shape at the far end of the chute.

The wood was sold to draymen who loaded their wagons from the pile. For their protection, the company kept one of its hands at work on a walkway that led up each side of the chute to take out of the chute the large pieces of wood, not suitable for stove wood, so that the draymen should not be endangered by such going over the end. By custom, this hand so stationed gave a warning signal "lookout" if by chance a large piece should go past him.

Sessler was at work loading his wagon when he was struck and killed by a large block fit only and intended for consumption in a boiler of an electric light plant, and therefore to be taken out of the chute and placed separate from the stove wood.

The hand located on the walkway, Beck, without the knowledge of Sessler, and of Manager Smith, who was 160 yards away engaged with a customer of the company, had left his post to go to a fire to warm, and while absent this particular piece, weighing approximately 100 pounds, passed over the chute. Smith, the manager, was not financially interested in the company.

These and further facts in relation to Sessler's position at the time, not to be here detailed, make a case of liability on the part of the company under the ruling of this court in the recent case of *Maness* v. *Clinchfield Coal Corporation,* 128 Tenn., 143, 162 S. W. 1105, and so aptly as not to require extended discussion.

The *Maness Case* involved liability for the wrongful death of an employee entitled to rely upon customary signals. Sessler was not an employee but was a customer of the lumber company, at the woodpile by its invitation, and was entitled to rely upon Beck's removing the block of wood in question or giving the warning signal. No sound differentiation can be made between an employee and such a customer for whose protection the guard had been placed, and the signal had been ordered. *Rosenbaum* v. *Shoffner,* 98 Tenn., 624, 40 S. W., 1086; *Bennett* v. *Louisville, etc., R. Co.,* 102 U. S., 577, 26 L. Ed., 235; *Sesler* v. *Coal Co.,* 51 W. Va., 322, 41 S. E., 216; 29 Cyc., 474.

We shall in this opinion deal more particularly with the error assigned on the ruling that there was lia-

bility on the part of the defendant manager, and with contentions incident thereto.

Is Smith, as a superior employee, intermediate the underhand whose negligence is relied on for recovery and the company, liable to respond therefor to a third person injured who was rightfully at the place of injury?

In *Stone* v. *Cartwright,* 6 Term Rep. (Durnf. & E.), 411, in the Court of King's Bench (1795) the action was brought by the owners of the surface, a coal mine underneath which was owned by one Ward, in which defendant Cartwright worked as manager, and as such hired and dismissed miners at his pleasure; but Cartwright had no personal interest in the business, and was not present when the injury complained of was done, nor had he given any particular orders for working the mine in the manner which had occasioned plaintiffs' damage. It was averred that Cartwright had worked the underlying mine unskillfully, and had neglected to leave necessary and sufficient supports under plaintiffs' buildings. Lord Kenyon, C. J., said: "There is no pretense whatever for imputing liability to the defendant in this action. . . . I have ever understood that the action must either be brought against the hand committing the injury, or against the owner for whom the act was done; but it was never heard of that a servant who hires laborers for his master was answerable for all their acts. The present defendant has no interest in the colliery, nor was it worked for his benefit." Lawrence, J., concurring (as did all the

judges), said: ·"If the plaintiffs had given evidence that the defendant had particularly ordered those acts to be done from which the damage had ensued, that would have varied the case."

The leading case in this country ruling the point is *Brown v. Lent*, 20 Vt., 529. It there appeared that Barker was a contractor in the construction of a railroad.   Defendant was his superintendent of all work, and under defendant was one Morris, who had more immediate charge of a blasting operation, general directions in respect of which were issued by defendant.   Morris gave directions to his crew relative to the particular blast complained of; defendant not being present, and giving no immediate attention thereto. The court, holding nonliability, wrote: "Barker, the contractor, in whose service the defendant was employed, as well as all other persons engaged about the ledge, may be, perhaps, responsible, as the ultimate master, the first originator and mover of all operations there, and so may Morris, and those immediately under his control, by reason of their direct participation in the injurious act; but neither principle nor authority will warrant the holding a mere middleman, an intermediate agent between the master and the direct agent, constructively responsible for the acts of the latter."

In the case of *Bileu v. Paisley*, 18 Ore., 47, 21 Pac., 934, 4 L. R. A., 840, it was said: "The . . . question as to whether the manager of sheep who is not the owner of them is responsible to a third party for any

acts of the herders which are done without his knowledge or authority, and contrary to his direction, depends upon his relations with the owner in regard to the matter.  If the manager in such a case were a mere employee of the owner, having only a general supervision over the sheep, the immediate care of which was intrusted to another employee of the owner, then he would not be liable for the acts of the latter, unless done by his direction [citing and quoting *Brown* v. *Lent*, supra.]''

In the recent case of *Thurman* v. *Pittsburg, etc., Copper Co.*, 41 Mont., 141, 108 Pac. 588, the mining company and its foreman were joined as defendants in an action based upon alleged negligence in that an outgoing shift of miners had failed to timber the mine, and defendants had failed to require such timbering to be done.  With reference to the connection of the foreman with the accident complained of, the court said:  ''He was not present at the time.  The shift boss was not in his employ, but in that of the company.  No negligence of which the shift boss may have been guilty is properly imputable to him, for he was merely an intermediate agent who could not be held responsible except for the omission of some duty with which he himself was personally charged.''

To the same effect is the case of *Ellis* v. *Southern Railway Co.*, 72 S. C., 465, 52 S. E., 228, 2 L. R. A. (N. S.), 378.

We believe that the above are all, or quite all of the American cases that relate to the subject and they

are in accord. Mr. Labatt comments on the paucity of such authorities, but states that "the sound rule may be said to be that the superior servant or middleman is not answerable, unless he had some direct control or participation in the wrong complained of." 7 Labatt, Master & Serv. (2 Ed.), sec. 2592; and see Cooley on Torts (2 Ed.), 729.

The liability to respond rested primarily upon the underhand, Beck, as the immediate actor at fault, and even the employer company's liability was secondary, and derivative from that primary source under the doctrine of *respondeat superior*. In the process of derivation, the liability did not attach to or rest on an intermediate superior employee, but went back to the employer company, which alone may be said to have had the attitude of privy or *quasi* privy to the immediate actor.

Such intermediate superior employee is to be held to respond only if his personal negligence, in an immediate act or command, was the efficient cause or a coefficient cause of the injury. He is not to be held along with the employer to constructive liability.

Any other rule would render the responsibility of a manager, superintendent, or boss so onerous that few men could be prevailed on to assume the rank; the less fit and irresponsible would find their best opportunity, under such rule, to rise from the lower grade of employment to the higher. The sound policy of the law, as well as principle and precedent, therefore, looks, toward the adoption of the rule of nonliability.

It is to be noted that no attempt is made by plaintiff to show that Manager Smith was negligent in the selection of Beck for the post held by the latter, or that Beck was incompetent. We have not, therefore, for determination how far negligence of Smith in employing an incompetent subordinate could constitute personal negligence on his part so far pivotal or proximate in causing the injury as to render him liable to a third party. *Railroad* v. *Blair,* 1 Tenn. Ch., 351; *s. c.,* 4 Baxt. 407.

It is further contended in behalf of the appellant company that a reversal of the cause as to Manager Smith must operate to reverse as to the company as well; the argument being that the judgment against both defendants in the lower court was an entirety, and must be so treated here.

"A judgment may be correct in all respects as to one party, and altogether erroneous or void as to another joint party, . . . and in such case there is no sufficient reason why the party rightfully charged should be discharged merely on the ground that the other party was wrongfully made liable by the same judgment." *Bentley* v. *Hurxthal,* 3 Head, 378. And the principle was applied to actions based on tortious acts in *Street Railway* v. *Gore,* 106 Tenn., 390, 61 S. W., 777.

The technical rule of the common law invoked on the point is now quite generally held to be too artificial, and the trend of modern authority is towards the rule,

as declared in this State, that reversal as to a party wrongfully adjudged liable does not require a reversal as to the party properly subjected to liability. *Sparrow* v. *Bromage,* 83 Conn., 27, 74 Atl., 1070, 27 L. R. A. (N. S.), 209, 19 Ann. Cas., 796, and notes. The modern rule is obviously just, and is founded on common sense.

There is no conflict between the rule herein declared and the holding of this court in the recent case of *Loveman* v. *Bayless,* 128 Tenn. —, 160 S. W. 841. In that case the judgment against the employer was held to be erroneous because the actor or employee, whose act was the one complained of, was adjudged not liable in the lower court. There was therefore lacking a basis for a derivative or constructive liability on the part of the employer.

The court of civil appeals in affirming the ruling of the lower court was in error. Writ of *certiorari* is granted, and the judgment against defendant Smith reversed; judgment here of affirmance as to the defendant company. Costs of appeal will be paid, one-third by the appellee, and two-thirds by the appellant company.