## Chester-Cambridge Bank and Trust Company et al. *v.* Rhodes et al., Appellants.

Argued January 11, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*William K. Rhodes,* for appellants, No. 23.

*C. William Kraft, Jr.,* for appellant, No. 24.

*Frank A. Moorshead,* and with them *Mark E. Lefever, H. E. Potter* and *Conlen, LaBrum & Beechwood,* for appellees.

*Clelland L. Mitchell* and *Boyd Lee Spahr,* filed a brief for interested party under Rule 61.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, March 22, 1943:

The question decisive of these appeals is whether officers of a corporate fiduciary are individually liable for a technical breach of trust committed by the corporation.

On October 9, 1929, Samuel N. Rhodes, a director of the Media-69th Street Trust Company, and two associates applied to that Company for a purchase money mortgage of $40,000. to be secured upon premises at the corner of Ashby and Copely Roads, in Upper Darby, Delaware County, which they had agreed to buy for $75,000. A committee of three, including Samuel N. Rhodes, appraised the property: the land at $80,000. and the buildings at $10,000. The appraisal was reasonable at that time. The loan was approved. Title was con-

veyed to a straw man, who gave a bond and mortgage to the Trust Company. The property was then conveyed to Frank B. Rhodes, President of the Trust Company and father of Samuel Rhodes, who held the title in dry trust apparently to further secure the mortgagee and to facilitate transfer. It was testified that he normally took title to such mortgaged property for the benefit of the Trust Company, and that in many instances, including the present one, the practice resulted in financial loss to him for taxes which he was obliged to pay as record owner.

At this time, Samuel Rhodes and his associates had an oral agreement with one Wilson to sell the premises to him at $110,000. for the erection of a large apartment building. Frank B. Rhodes had noted upon the loan application that there was to be no commission upon the mortgage "as it will be paid off or sold within a month".

The buildings on the mortgaged premises were razed in accordance with the oral agreement between Wilson and the real owners. The onset of the financial depression made it impossible for Wilson to perform the agreement, and the land remained unimproved, taxes and mortgage interest being paid by the real owners.

On October 8, 1931, the trust officer of the company, being informed by a clerk that a mortgage was needed in the trust mortgage pool operated by the company, transferred this mortgage to the pool. This was done without consulting either Frank Rhodes or his son, then a Vice-President, and they had no knowledge of the transaction. The transfer increased the security of the participation certificates in the face amount of $35,600. The mortgage was not then in default, and two experienced real estate operators testified that the fair market value of the premises was $60,000. at that time.

In 1933 one of Samuel Rhodes's associates died and by his direction life insurance proceeds of $10,000. were applied to the outstanding indebtedness on the mortgage loan, reducing it to $31,966.66. Shortly thereafter, Frank

Rhodes reconveyed the premises to the straw owner and mortgagor. Since that time, principal and interest have been in default.

The trust company passed into the hands of the Secretary of Banking in 1933. The corporate plaintiff was appointed substituted trustee of the mortgage pool in 1934. From time to time, V. Gilpin Robinson, co-trustee with the closed trust company of the Estate of Edward C. Holmes, deceased, inquired of the Banking Department and substituted trustee of the mortgage pool, in which the estate held a participation certificate, concerning the status of this mortgage. He demanded of Frank and Samuel Rhodes details of the transaction and asserted an intention to hold them personally responsible for a breach of trust in connection therewith. In this he received no support from the Secretary of Banking or his representative. The special counsel employed by the Department testified that "it was one of the safest investments that the trust had so far as value was concerned", (R166a).

The mortgage was foreclosed by the substituted trustee in 1937, and the real estate is now held by it for the benefit of holders of participation certificates. Frank Rhodes died in 1939. The present bill was filed in 1940, against his executors and Samuel Rhodes individually to compel them to withdraw the bond and mortgage from the pool, to replace them with cash or equivalent securities, and to pay all arrearages of interest and taxes.

The chancellor found as a fact that Frank Rhodes did not profit in any way from the transaction, and that neither he nor his son participated in the transfer. Nevertheless, he concluded that a breach of trust had been committed and that Samuel Rhodes, as a recipient of the loan proceeds, was individually liable. Exceptions were filed by both parties. The court en banc entered a final decree dismissing defendants' exceptions but reinstating the bill as to the executors, who were ordered to join with Samuel Rhodes in paying $31,966.66 into the pool, with

interest, taxes and costs of foreclosure. The defendants appealed.

For the purpose of this case we need not decide whether this transfer from the commercial department to the mortgage pool constituted a technical breach of trust by the corporate fiduciary: See *Tracey et al., Co-Trustees v. Central Trust Co.,* 327 Pa. 77; *Guthrie's Est.,* 320 Pa. 530; *Greenawalt's Est.,* 343 Pa. 413. Nor shall we rule upon the applicability or constitutionality of the Act of June 24, 1939, P. L. 739, 7 PS Sec. 819-1111a, purporting to validate such transfers. No consideration will be given to the failure to reappraise the mortgaged premises at the time of transfer. *Crane's Est.,* 344 Pa. 141. The mortgage was a legal investment for trust funds. We shall assume, however, but not decide, that the transfer itself constituted a technical breach of trust.

Are these two officers of the corporate trustee personally liable for the act of the corporation? The only facts established by plaintiffs show that one defendant, Samuel Rhodes, obtained a mortgage loan upon adequate security and with the approval of the proper officers of the corporation. There was nothing unlawful or improper in this initial transaction, and even if there were, these plaintiffs could assert no interest therein. It is also clear that Samuel Rhodes and his father did not request the transfer to the mortgage pool, take any part in it, had no actual knowledge concerning it, and derived no benefit thereby. The transfer was made by other officers and employees of the corporation entrusted with the duty of supervising trust investments. It was reported to a finance committee of which Samuel Rhodes was not a member and upon which Frank Rhodes did not sit. The report of the trust officer to the Board of Directors did not identify any mortgages transferred to the pool.

The court below decided that these two men, as officers, *should* have known of the transfer. It *assumed* that the transaction could not have occurred without their knowledge and consent. This assumption is clearly

contrary to the plain facts in the record. At the most, they are charged with nonfeasance, and not with misfeasance or malfeasance.

We have been unable to find any authority in this jurisdiction for the imposition of liability on these officers and directors. The only case cited by the court below in support of its decree is *Bailey et al. v. Jacobs,* 325 Pa. 187. That was a suit by *stockholders* of a corporation against its president for malfeasance and misfeasance—making use of his office and corporate funds for personal profit. There is no analogy whatever between that case and the one now before us.

It is true that a director or officer of a corporation may have personal liability for damages suffered by third persons when he knowingly participates in a wrongful act. See *Malone v. Pierce,* 231 Pa. 534; *Warner v. McMullin,* 131 Pa. 370. But where, as in this case, directors or officers are charged with nonfeasance, no individual liability attaches. This has always been the rule in this jurisdiction. See *Spering's Appeal,* 71 Pa. 11; *Swentzel v. Penn Bank,* 147 Pa. 140; *Cohen et al. v. Maus et al.,* 297 Pa. 454. In the latter case we held that directors of a corporation could not be charged with individual liability for conversion of property by the corporation of which they had no actual knowledge. However (at page 458), Justice SCHAFFER, afterwards Chief Justice, pointed out that a director who participated actively in the conversion would have been personally liable. The case therefore admirably illustrates the different consequences attendant upon malfeasance and nonfeasance. See also *Mechanics' B. & S. Assn. No. 2's Assigned Estate,* 202 Pa. 589, 596; 2 Segal, Pennsylvania Banking and Building & Loan Law, 256 et seq.

The fact that Frank Rhodes was president of the corporation, and, as such, charged with general supervision of its affairs, does not serve to make him liable for the misconduct of other officers merely by virtue of his office. In *Folwell v. Miller,* 145 Fed. 495 (C. C. A. 2d, 1906) at

496, it was said: "The president of the corporation is an agent of very extensive, but not unlimited, powers. He is not personally liable because of his official capacity, any more than are the directors or stockholders, for torts committed by the corporation, in the absence of personal participation in the tortious act. As an agent, he is not liable for the acts of misfeasance or nonfeasance of his subordinate agents or employes. *Bath v. Caton,* 37 Mich. 199; *Paper Co. v. Dean,* 123 Mass. 267; *Brown v. Lent,* 20 Vt. 529; *Murray v. Usher,* 117 N. Y. 542, 23 N. E. 564; *Nat. Cash Reg. Co. v. Leland,* 94 Fed. 502, 37 C. C. A. 372; *Arthur v. Griswold,* 55 N. Y. 400." "As a general rule one officer of a bank is not liable for a loss resulting from the acts or negligence of another officer, unless he is personally chargeable with negligence in the matter." 7 Corpus Juris, page 568. And, in *Briggs v. Spaulding,* 141 U. S. 132, 147, Chief Justice FULLER, speaking of the personal responsibility of officers and directors of a bank, said: "They are not insurers of the fidelity of the agents whom they have appointed, who are not their agent but the agents of the corporation; and they cannot be held responsible for losses resulting from the wrongful acts or omissions of other directors or agents, unless the loss is a consequence of their own neglect of duty, either for failure to supervise the business with attention or in neglecting to use proper care in the appointment of agents." As to the duty of supervision, it was said, quoting from *Scott v. Depeyster,* 1 Edw. Ch. 513, 541: "I know of no law which requires the president or directors of any monied institution to adopt a system of espionage in relation to their secretary or cashier or any subordinate agent, or to set a watch upon all their actions." See also *United States v. Stone Cliff Coal & Coke Co.,* 6 F. Supp. 1, 5 (D. C. S. D. W. Va., 1934).

Plaintiffs have cited Section 326 of the Restatement of Trusts which reads: "A third person who, although not a transferee of trust property, has *notice* that the trustee is committing a breach of trust and *participates*

therein is liable to the beneficiary for any loss caused by the breach of trust." This rule, and its relation to officers and directors of a corporate trustee is discussed at length in Section 326.3 of Scott on Trusts, Vol. III. It is sufficient for the present case to point out that neither Frank nor Samuel Rhodes had notice of the technical breach of trust resulting from the transfer of the mortgage to the pool, and that neither participated in it. Under such circumstances, and under the rule of our cases relating to the responsibility of corporate officers and directors, they are not subject to individual liability to plaintiffs.

The decree of the court below is reversed and the bill is dismissed at appellees' cost, in both appeals and as to both appellants.