Sproul, Trustee, et al. *v.* Stein (et al., Appellant).

Argued December 2, 1943. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

reargument refused January 14, 1944.

*James J. Burns, Jr.,* for appellant.

*Harvey A. Miller,* of *Miller & Nesbitt,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, January 3, 1944:

This is an action of assumpsit upon a fidelity bond executed by the Eagle Indemnity Company, a paid surety, in favor of Fry & Mathias, Inc. and Provident Trust Company of Pittsburgh, "jointly but not severally", to insure them against loss by larceny or embezzlement of "money, funds or other personal property",

on the part of the principal, Harry A. Stein. The bond is in the amount of $25,000. The trial resulted in a verdict for plaintiffs in the same amount. Defendant's motions for judgment n. o. v. and a new trial were refused, whereupon this appeal was taken.

The plaintiffs are the Provident Trust Company and Robert C. Sproul, trustee in bankruptcy for Fry & Mathias. In their statement of claim, they aver that Fry & Mathias, being in need of commercial credit and having subject to its order in a United States bonded warehouse certain stocks of liquor, entered into an Indenture of Trust with Provident Trust Company for the purpose of obtaining "authentication" by the Company of notes to be issued by Fry & Mathias. The Indenture, dated October 2, 1939, provides briefly that Fry & Mathias should issue to Provident Trust Company, as Trustee, warehouse receipts for liquor as collateral for the notes of the Company, which notes and collateral were to be "authenticated" by the Trustee and returned to Fry & Mathias for negotiation, or were to be negotiated on behalf of Fry & Mathias by the Trustee through its commercial department. The collateral pledged by Fry & Mathias was to be subject to inspection and approval by the Trustee. In addition, certain accounts receivable were to be assigned to the Trustee for the purpose of securing the outstanding notes. As these notes were paid, Fry & Mathias was entitled to withdraw the collateral pledged and to use it for its own purposes.

It appears from the testimony that the Provident Trust Company insisted, as part of the transaction, that the manager of Fry & Mathias, Stein, be bonded, since he would be responsible for the collection and transmittal to the Trustee of certain proceeds from the assigned accounts receivable. For this purpose, Fry & Mathias made application to the surety for a fidelity bond in which Stein, as manager of the company, should be principal and the obligees should be Fry & Mathias and the Provident Trust Company "as their interests may appear".

For some reason not explained, but with the looseness frequently encountered in such undertakings, a bond was issued naming Fry & Mathias and Provident Trust Company jointly as *"employers"* of Harry A. Stein. It appears that Stein was not at any time an employee of the Provident Trust Company, and that the bond was so issued merely because the printed form was used by the surety, which made no provision for setting forth the actual situation.

Pursuant to the Indenture of Trust, collateral notes totaling $40,000. were issued by Fry & Mathias, "authenticated" by the Trustee and negotiated. The proceeds were received by Fry & Mathias. It is not clear from the record how many of these notes were discounted through the commercial department of the Trust Company and whether any money of the Trust Company was actually paid to Fry & Mathias. To secure these notes, there were delivered to the Trustee collateral schedules, certificates of collateral, and numbered warehouse receipts, all signed by D. H. Stern as President of Fry & Mathias. There is no evidence that these receipts or collateral schedules were delivered to the Trustee by Stein, or that he had any responsibility for their issuance by his superior officer. Sometime in 1940, it became apparent to the Trustee that the affairs of Fry & Mathias were hopeless and suspicions were aroused concerning the collateral pledge under the Trust Indenture. On August 5, 1940, Fry & Mathias was adjudged bankrupt and in the bankruptcy proceedings it appeared that the Company had for some time issued fraudulent warehouse receipts pledging the same liquor to secure several different creditors. Notice was given by Provident Trust Company to the surety that a possible claim upon its bond existed by reason of the issuance to it of such fraudulent warehouse receipts. The surety denied liability.

The statement of claim averred that Harry A. Stein had full charge of the business of Fry & Mathias; that he had knowledge of the fraudulent issue of duplicate

warehouse receipts and that he placed them in the hands of Provident Trust Company. These averments were entirely unsubstantiated at the trial, there being no evidence whatever of his actual participation in fraud, or knowledge on his part of the commission of fraud. Nevertheless, the Trial Judge permitted the jury to infer from the "circumstantial evidence" establishing that Stein was the manager of the business, that he must have participated in a conspiracy to defraud the Trustee. This evidence was not sufficient to establish criminal misconduct upon the part of Stein. The mere fact that he was an officer of the company was insufficient to establish any wrong doing on his part. *Cf. Chester-Cambridge Bank & Trust Co. v. Rhodes*, 346 Pa. 427, 31 A. 2d 128. It does not appear that he received any portion of the proceeds from the issuance of the fraudulent warehouse receipts or that he converted them to his own use or to the use of any other person. Without proof that he as the principal on the bond was guilty of larceny or embezzlement, the case of the plaintiffs collapsed and a nonsuit should have been ordered.

There are other fatal weaknesses in plaintiffs' case. Dismissing from consideration the fact that one of these joint plaintiffs was the actual beneficiary of the fraud, and assuming that they have a right to recover jointly upon the bond for loss of property sustained by the Trustee alone, we are unable to see how that loss has been proved. The record is in a state of confusion from which it is impossible to elicit any evidence as to the particular money or property which the Trustee is alleged to have lost by larceny or embezzlement. The money originally received by Fry & Mathias as proceeds of the notes came apparently from persons other than the Trust Company, which merely acted as broker in some instances. This money was not property of the Trust Company, but of the cestuis que trustent, the purchasers of the notes. It appears that it is now a holder of a large portion of the notes, but it is not clear from the pleadings or evi-

dence when it obtained them, what it paid for them, and why it purchased them. The court below dismissed this nebulous proof of loss, and the even more nebulous proof of the complicity of Stein in the fraud by asserting merely, "As we read the testimony, there is no question but that the evidence establishes that *some person or persons* in the employ of Fry & Mathias obtained *money* from Provident Trust Company by use of the fraudulent certificates, and applied that money to the use of Fry & Mathias." There is no indication in the opinion as to what "money" is meant.

The appellees, apparently recognizing this weakness in their proof, seem now to proceed upon the theory that *liquor* was embezzled from the Trustee, or that the *proceeds of the collateral notes* were embezzled, since they should have been applied to replace the rehypothecated liquor as security. There is no evidence whatever that Stein received the proceeds of the notes, and as this theory was not advanced in the pleadings or at the trial, it cannot be considered. An examination of the schedule prepared by an accountant indicates that in every instance but one, involving only ten barrels of liquor, the warehouse receipts delivered to the Trust Company were for liquor previously pledged with other creditors by warehouse receipt.

There is nothing in the record to establish which of the several claimants was the *owner* of the disputed liquor, which is by no means a simple problem (See *Miller v. Browarsky*, 130 Pa. 372, 18 A. 643. *In re Miller Pure Rye Distilling Co.*, 176 Fed. 606 (E. D. Pa. 1910), affirmed sub nom. *Taney v. Penn Nat'l Bank*, 187 Fed. 689 (C. C. A. 3d, 1911) ; 232 U. S. 174. However, if the Trust Company never owned this liquor, neither Stein nor anyone else could have embezzled the liquor from it. If it owned the liquor, it is not clear how the attempted rehypothecation would deprive the Trust Company of its property rights therein, for there is no evidence that any liquor was withdrawn by the other creditors, or by Fry &

Mathias, which was the property of the Trust Company. The only proof of loss offered is an agreement of compromise between the Trust Company and the other creditors whereby it was agreed that the Trust Company was entitled to liquor of a value of no more than $2,820.05, after deducting bankruptcy costs and withholding approximately 66% of the balance from distribution. This agreement does not in any way judicially establish ownership of the liquor, and is in no event binding upon the defendants who were not parties to it. It was also proved that Provident Trust Company had received an additional $1,140.93 from the estate of the bankrupt upon its claim as trustee for the collateral notes, and it was not shown that there would be no further dividends.

It may be pointed out that the Trust Indenture expressly provides that the Trustee shall have no liability upon the collateral notes either for their payment or for the sufficiency of the collateral. It appears, despite the fact that the collateral notes expressly refer to the Trust Indenture, that the Trustee is assuming liability upon the notes, or some of them, and has purchased others from the holders. There is, however, no evidence as to how much it has been obliged to pay, or will assume to pay, as Trustee to any of the holders of the notes. In short, the proof not only fails to establish any loss of definite property by embezzlement or larceny, but falls short of proving what actual damages were sustained through the fraud perpetrated upon it. Entirely aside, therefore, from the fact that the condition of the bond was not satisfied by proof of larcency or embezzlement, the jury should not have been permitted to speculate as to the amount of damages suffered by the Trustee.

In view of the foregoing, it is unnecessary to consider whether the Act of June 24, 1939, P. L. 872, section 827, 18 PS (Pocket Supplement) 263, section 4827, relating to embezzlement by corporate employees, is applicable.

The judgment of the court below is reversed and here entered for defendant; costs to be paid by appellees.