529 A.2d 1148

John E. Kaites and Johnstown Coal and Coke, Inc., Petitioners *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Respondent.

Argued May 21, 1987, before Judges MACPHAIL and COLINS, and Senior Judge NARICK, sitting as a panel of three.

*George G. Mahfood,* with him, *Gregg M. Rosen* and *Regis J. Schnippert, Rosen & Mahfood,* for petitioners.

*Michael E. Arch,* Assistant Counsel, with him, *Marc A. Roda,* Assistant Counsel, for respondent.

*John M. Elliott,* with him, *Stephen C. Braverman, Baskin, Flaherty, Elliott & Mannino, P.C.,* for Amicus Curiae, Pennsylvania Coal Mining Association.

OPINION BY JUDGE MACPHAIL, August 6, 1987:

John E. Kaites (Petitioner)[1] has appealed from an order of the Environmental Hearing Board (Board) which, *inter alia,* denied his petition to reopen the record and entered summary judgment in favor of the Department of Environmental Resources (DER) thereby upholding DER's suspension of coal refuse and industrial waste permits issued to Johnstown Coal and Coke, Inc. (Johnstown) and finding Petitioner, as president and chief executive officer of Johnstown, individually responsible for complying with an abatement order issued by DER. The only aspect of the Board's decision which is challenged in the instant appeal is its conclusion that Petitioner, as an individual corporate officer, may be the subject of an abatement order.

The relevant facts in this matter have been agreed to by stipulation. The mining site here involved is known as the Bear Run mining complex in Indiana County and includes two mines, a processing plant, coal refuse disposal area and coal storage area. Bear Run No. 1 mine and the coal storage area were established in 1965 by another mining company. Johnstown bought the mine and storage area in 1966 or 1967 and DER issued a permit authorizing operation of the complex in 1968.

In 1972, Petitioner purchased Johnstown, having served as a mine superintendent prior to that time. In that same year, the Bear Run No. 1 mine was sealed following the cessation of mining operations at that location. Despite oral approval of the seals by a DER official, acidic discharges have occurred from the mine. A marked increase in the amount of discharges followed backfilling activity by the Benjamin Coal Company,

---

[1] Although Johnstown Coal and Coke, Inc. was listed as a party in the petition for review filed with this Court, it has had no further participation in the appeal.

which included blasting over the approximate location of the mine seals in 1973. Subsequent attempts, pursuant to two consent orders with DER,[2] to reseal the mine and remedy discharges from the site have proven unsuccessful.

On February 10, 1984, DER issued the abatement and suspension order which is the subject of the instant appeal. The order named both Johnstown and Petitioner individually as responsible for abating the nuisance which admittedly continues to exist at the facility. On appeal, the Board ruled that the imposition of individual liability on Petitioner was proper. As noted previously, Johnstown has not pursued a challenge to the Board's ruling regarding its liability to abate the nuisance and the suspension of its permits.

Petitioner has presented three issues for our consideration: (1) whether or not he is a "person" to whom an abatement order may be issued under applicable statutes; (2) whether the record supports "piercing the corporate veil" so as to render Petitioner directly liable for abating the existing nuisance; and (3) whether Petitioner may be found liable under the "participation" theory of joint tortfeasor liability.

Before addressing the merits, a procedural matter which has not been briefed by the parties deserves our mention. The Board has issued two decisions in this matter. The first, dated August 7, 1985, entered partial summary judgment on the issue of Petitioner's individual liability and the joint responsibility of Johnstown and Petitioner to correct violations at the mining complex. The second decision addressed an untimely request for

---

[2] Under a 1975 consent order, Johnstown unsuccessfully attempted to reseal the Bear Run No. 1 mine with a "dowell sealing process." Pursuant to a 1976 consent order, Johnstown constructed a gravity collection ditch to convey the discharges to a treatment plant.

reconsideration by Petitioner as well as DER's motion for summary judgment on the permit suspension issue. While noting that the reconsideration petition was untimely, the Board nevertheless addressed the merits of the petition thereby clarifying and reaffirming its prior decision. The Board also granted DER's motion for summary judgment.

Although we have reservations regarding the procedure employed in this case, we will proceed to address the merits given the fact that DER has raised no procedural objections as well as the fact that full summary judgment was not granted until the second Board decision was entered on March 14, 1986. The petition for review from that final order to this Court was timely filed.

Turning to the merits, Petitioner first argues that he is not a "person" to whom an abatement order may issue under either Section 610 of The Clean Streams Law (CSL),[3] or Section 9 of the Coal Refuse Disposal Control Act (CRDCA).[4] Section 610 of the CSL provides, pertinently, as follows:

> The department may issue such orders as are necessary to aid in the enforcement of the provisions of this act. Such orders shall include, but shall not be limited to, orders modifying, suspending or revoking permits and orders requiring persons or municipalities to cease operations of an establishment which, in the course of its operation, has a discharge which is in violation of any provision of this act. . . . The department may, in its order, require compliance with such conditions as are necessary to prevent or abate pollution or effect the purposes of this act.

---

[3] Act of June 22, 1937, P.L. 1987, *as amended,* added by Section 17 of the Act of July 31, 1970, P.L. 653, 35 P.S. §691.610.

[4] Act of September 24, 1968, P.L. 1040, *as amended,* 52 P.S. §30.59.

Section 9 of the CRDCA contains similar language. Both statutes contain the following virtually identical definition of the term "person":

> *'Person'* shall be construed to include any natural person, partnership, association or corporation or any agency, instrumentality or entity of Federal or State Government. *Whenever used in any clause prescribing and imposing a penalty, or imposing a fine or imprisonment, or both, the term 'person' shall not exclude the members of an association and the directors, officers or agents of a corporation.*

Section 1 of the CSL, 35 P.S. §691.1 (emphasis added); *see also* Section 3(9) of the CRDCA, 52 P.S. §30.53(9). Petitioner contends that the second sentence of this definition, underscored above, demonstrates the Legislature's intent that corporate officers may be subjected only to civil and criminal penalties, but not abatement orders. We disagree that the underscored language creates a limitation on the general definition of a "person" set forth in the first sentence so as to exclude corporate officers from enforcement orders under the CSL and CRDCA. We, instead, view the second sentence as merely emphasizing and insuring that there be no doubt regarding the personal liability of the named individuals for applicable penalties, fines or imprisonment. We do not believe that this legislative clarification in and of itself limits the authority of DER to issue abatement orders to corporate officers. We note that our interpretation of this definition is in keeping with the broad remedial purposes of the statutes involved. *See* Section 4 of the CSL, 35 P.S. §691.4; Section 1 of the CRDCA, 52 P.S. §30.51, and Section 1921(c) of the Statutory Construction Act of 1972, 1 Pa. C.S. §1921(c).

The second issue is whether the record supports "piercing the corporate veil." If the corporate identity

may properly be disregarded in this case, then liability for the continuing nuisance would clearly extend to Petitioner as the owner of the facility. *See Donsco, Inc. v. Casper Corp.*, 587 F.2d 602 (3d Cir. 1978). We observe that the Board's final decision in this matter, as clarified in its second decision, was not primarily grounded on this theory. We conclude that, indeed, the record does not support the conclusion that Johnstown was a sham corporation or the alter ego of Petitioner.

The general rule in Pennsylvania is that a corporation shall be regarded as an independent entity even if, as here, its stock is owned entirely by one person. *College Watercolor Group, Inc. v. William H. Newbauer, Inc.*, 468 Pa. 103, 360 A.2d 200 (1976); *Zubik v. Zubik*, 384 F.2d 267 (3d Cir. 1967), *cert. denied*, 390 U.S. 988 (1968). Factors which may justify disregarding the corporate form include undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud. *Department of Environmental Resources v. Peggs Run Coal Co.*, 55 Pa. Commonwealth Ct. 312, 423 A.2d 765 (1980); *Donsco*. The only pertinent evidence on this issue in the record before us is that Johnstown's Board of Directors, which acts in an advisory capacity to Petitioner, has not met formally since the late 1970s. We do not think that this solitary fact would support disregarding Johnstown's corporate form in the matter *sub judice*.

Thus, if individual liability is to be imposed on Petitioner, it must be by analogizing the tort law "participation" theory of liability applied by the Board. As a general rule, corporate officers are individually liable for their own tortious actions. *Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 470 A.2d 86 (1983); *Donsco*. In Pennsylvania, the participation theory imposes liability "on the individual as an actor rather than as an

owner. Such liability is not predicated on a finding that the corporation is a sham and a mere alter ego of the individual corporate officer. Instead, liability attaches where the record establishes the individual's participation in the tortious activity." *Wicks,* 503 Pa. at 621, 470 A.2d at 90. Thus, in order for liability to attach the officer must actually participate in wrongful acts. *Amabile v. Auto Kleen Car Wash,* 249 Pa. Superior Ct. 240, 376 A.2d 247 (1977). He may be held liable for misfeasance but not for *simple* nonfeasance. *Id.; see also Chester-Cambridge Bank and Trust Co. v. Rhodes,* 346 Pa. 427, 31 A.2d 128 (1943) (liability may not be imposed on a corporate officer by virtue of his office alone); *United States v. Sutton,* 795 F.2d 1040 (Em. Ct. App. 1986), *cert. denied,* 107 S.Ct. 873 (1987).

The parties have stipulated as follows regarding Petitioner's general involvement in DER compliance matters:

> 50.  In his capacity as CEO and President, [Petitioner] . . . has been and is responsible for making all management decisions for Johnstown concerning the disposition and operation of the Bear Run mining complex.
>
> . . . .
>
> 53.  As President and CEO of Johnstown, [Petitioner's] . . . management decisions include dealing with DER and the resolution of compliance orders, e.g., negotiator of and signatory to the 1976 Consent Order and Agreement.

Stipulation at 7-8; Reproduced Record (R.R.) at 42a-43a. Based on these facts alone, the Board concluded that Petitioner could be found personally liable for violating the CSL and the CRDCA. We must disagree with this conclusion.

Our analysis of the stipulations reveals that they establish two factors: (1) Petitioner's status as a corporate

officer and (2) his responsibility for management decisions including "the resolution of compliance orders." As we have already noted, however, Petitioner's position as a corporate officer cannot, *in and of itself,* lead to the imposition of personal liability for the tortious conduct of Johnstown. *Chester-Cambridge Bank and Trust Co.* By the same token, we do not believe that liability may be imposed by *inferring* that given Petitioner's managerial position he is necessarily responsible for any statutory infractions committed by Johnstown.

We are cognizant that the statutes here involved impose strict liability, without regard to fault, on persons found to be in violation of their provisions. We also realize that nonfeasance, or the failure to act, with regard to a pollutional discharge may be one of the most egregious forms of violating the statutes involved. Despite these observations, however, we do not believe that Petitioner may be held personally liable for violating the statutes absent some positive proof of wrongful conduct. *See Wicks.* The record, in fact, contains evidence that Petitioner and Johnstown have twice attempted, albeit unsuccessfully, to remedy the acid mining discharges pursuant to consent orders with DER.[5] Aside from inference and Petitioner's status as a corporate officer, however, there is no specific evidence demonstrating Petitioner's intentional neglect or misconduct which would support imposing individual liability on him for violating the CSL and CRDCA.

Absent evidence which would support "piercing the corporate veil," we do not believe that Pennsylvania law supports the imposition of strict liability on a corporate officer such as Petitioner simply by virtue of his managerial position. We emphasize that our ruling should not be regarded as insulating corporate officers from per-

---

[5] *See supra* note 2.

sonal liability for abating a statutory public nuisance such as that involved here when supported by adequate evidence. Our holding here is controlled by the lack of sufficient evidence demonstrating that Petitioner has contributed, by personal actions of neglect or misconduct, to the existing nuisance at the Bear Run complex.

We believe a final note is in order regarding the Board's reliance on *United States v. Park*, 421 U.S. 658 (1975) to support its alternative analysis that, even without proof of active participation, Petitioner's personal liability could be grounded on his "responsible relation" to the existing nuisance which would have the effect of placing the authority and responsibility for remedying the violations on Petitioner individually. The *Park* case involved a criminal prosecution of the President of Acme Markets, Inc. under Section 301(k) of the Federal Food, Drug and Cosmetic Act (FFDCA), 21 U.S.C. §331(k). The violations related to a rodent-infested warehouse owned by Acme. The legal issue in the case involved the appropriate standard of liability to be applied to corporate officers under the FFDCA. Given the high public interest in pure food, the Supreme Court concluded that strict criminal liability could be imposed on an agent of the corporation if he "had the power to prevent the act complained of." *Park* at 671.

Of course, several distinguishing factors exist between *Park* and the matter *sub judice* including the special nature of the public interest involved under the FFDCA. Though we recognize the high public interest which justifiably exists in abating acid mining discharges into the waters of this Commonwealth, we do not believe that Pennsylvania law supports application of the type of individual liability which the United States Supreme Court has interpreted the FFDCA, through a long line of cases, as requiring in the federal criminal law context. We conclude that, under Pennsyl-

vania law, the public interest will not be violated by requiring specific evidence of acts of intentional neglect or misconduct before imposing individual liability on a corporate officer for abating a public nuisance under the CSL or CRDCA.

We, accordingly, will reverse the order of the Board insofar as it imposes individual liability on Petitioner.

### ORDER

The order of the Environmental Hearing Board in the above-captioned matter is hereby reversed insofar as it imposes individual liability on John E. Kaites for complying with the terms of the February 7, 1984 enforcement order of the Department of Environmental Resources. The order of the Environmental Hearing Board is affirmed in all other respects.