**WRIGHTCO TECHNOLOGIES TECHNICAL TRAINING INSTITUTE–CHAMBERSBURG, Wrightco Technologies Technical Training Institute–Ebensburg, Wrightco Technologies Technical Training Institute–Erie, Wrightco Technologies Technical Training Institute–Harrisburg, Wrightco Technologies Technical Training Institute–Alexandria, Wrightco Technologies Technical Training Institute–Shelocta, Wrightco Technologies Technical Training Institute–New Castle, Wrightco Technologies Technical Training Institute–Uniontown, Wrightco Technologies Technical Training Institute–Mount Carmel, Petitioners**

v.

**DEPARTMENT OF EDUCATION, STATE BOARD OF PRIVATE LICENSED SCHOOLS, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 11, 2003.

Decided April 19, 2004.

As Amended April 22, 2004.

Reargument Denied June 21, 2004.

---

Jayson R. Wolfgang, Harrisburg, for petitioner.

Amy C. Foerster, Harrisburg, for respondent.

BEFORE: LEADBETTER, Judge, and LEAVITT, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge LEAVITT.

Nine technical schools [1] affiliated with Wrightco Technologies, Inc. petition for review of the May 22, 2003 order of the Department of Education, State Board of Private Licensed Schools (Board) [2] finding

---

1. The nine licensed schools are the petitioners listed in the caption of this opinion.

2. The Board was created under Section 3(a) of the Private Licensed Schools Act, Act of

that each of the petitioners (Wrightco Schools) violated the Private Licensed Schools Act (Act). The Board found that between December 1999 and April 2002, the Wrightco Schools made misrepresentations to students and prospective students. Specifically, the Board found that the Wrightco Schools claimed to offer students certification from Electronic Technicians Association International, Inc., known by the acronym "ETA," when, in fact, they offered the certification from Evolving Technologies Association International, Inc., a corporation under common ownership with the Wrightco Schools. The Board fined each petitioner $750, for a total of $6,750.

Wrightco Technologies, Inc. (Wrightco) is a corporation that owns the Wrightco Schools; each school is licensed by the Board. The Wrightco Schools, administered from Claysburg where Wrightco is headquartered, offer technical training in fiber optics, telecommunications, data communications, voice data and video applications, computer operations and electronic security alarms. Students are promised preparation for examinations needed to become certified in their chosen area of training. Electronic Technicians Association International, Inc. (Electronics Technicians Association), founded in 1978 and headquartered in the State of Indiana, tests and certifies, *inter alia*, proficiency in fiber optics. Because certification by

Electronic Technicians Association is recognized internationally, the Wrightco Schools recommended, beginning in 1997, that their students obtain "ETA" certification and promised preparation for this certification in their various publications.

On December 13, 1999, Brent Wright, the President of Wrightco, established Evolving Technologies Association International, Inc. (Evolving Technologies), a Pennsylvania corporation that tests and certifies proficiency in the same technical areas as does Electronic Technicians Association. Mr. Wright is the Executive Director of Evolving Technologies and Chairman of its Certification Committee. Evolving Technologies is located at the same Claysburg address as Wrightco and the Wrightco Schools. After 1999, students at the Wrightco Schools were offered testing and certification by Evolving Technologies, in place of Electronic Technicians Association. In communications with current and prospective students, the Wrightco Schools referred to Evolving Technologies as "ETA," the same acronym long used by Electronic Technicians Association.

On August 27, 2001, the Department of Education, Division of Private Licensed Schools (Division) issued nine violation notices to each of the Wrightco Schools charging them with misrepresentation, in

---

December 15, 1986, P.L. 1585, 24 P.S. § 6503(a). It provides that the Board be composed of fifteen members representing private licensed schools and the general public. The Board is responsible for licensing educational entities that fall within the definition of a private licensed school and for penalizing such schools when they are found to violate the Act or the Board's Regulations. Section 2 of the Act defines a private licensed school, in relevant part, as a "school or classes operated for profit or tuition that provides resident instruction to prepare an individual to pursue an occupation in the skilled

trades, industry or business." 24 P.S. § 6502. The Department of Education's Division of Private Licensed Schools serves as staff to the Board. The Board's Review and Recommendation Panel acts as the Board's prosecutorial arm and directs Board staff in enforcement actions against licensed schools. This panel was created by regulation in order to ensure separation of the Board's prosecutorial and adjudicatory functions in accordance with *Lyness v. State Board of Medicine,* 529 Pa. 535, 605 A.2d 1204 (1992). As the disinterested adjudicator, the Board is not a party to this appeal.

violation of statute and regulation.[3] Essentially, the Division charged that both existing and prospective students were misled by the references to "ETA" made by the Wrightco Schools in their communications with students who believed, erroneously, that they would be certified by Electronic Technicians Association. Under the applicable regulation,[4] a licensee receiving a notice of violation from the Division has 14 days to cure the violation.

On September 10, 2001, in accordance with the regulation, the Wrightco Schools sent a letter to the Division offering to cure. They agreed that going forward, the Wrightco Schools would not use the terms "ETA" or "Evolving Technologies" to identify the certification examinations made available to their students.[5] Instead, they agreed to use, henceforth, the fictitious name "Certifications International," which Evolving Technologies had agreed to file for use in Pennsylvania. The Board accepted the cure proposed by the Wrightco Schools, and on January 23, 2002, the Board informed the Wrightco Schools that the violations were being closed. The Board cautioned, in its closing letter, that the Division would continue to monitor the activities of the Wrightco Schools to assure their compliance with the promise not to use "ETA" in their communications with prospective and existing students.

On April 12, 2002, three months later, the Division sent a letter to each of the Wrightco Schools stating the Division's belief that the schools were continuing to refer to "ETA" in their advertising, brochures and websites. The letter explained that the Division intended to present the matter to the Board's Review and Recommendation Panel at its May 2002 meeting for a determination as to whether to initiate a formal enforcement action. Thereafter, on June 6, 2002, the Division issued Orders to Show Cause to each of the Wrightco Schools asserting that they had used "ETA" in their publications causing students to be misled. The orders directed the Wrightco Schools to show cause why the Board should not revoke their licenses and levy a civil penalty on them. The Wrightco Schools filed answers to the Division's allegations, and an administrative hearing was held before a panel of three Board members (Hearing Panel) on January 15, 2003.

On May 5, 2003, the Hearing Panel issued a proposed decision concluding that

---

**3.** Prior to August 27, 2001, the parties had been in discussion. The Division first raised its concerns in a May 29, 2001 letter. The Wrightco Schools proposed to send a letter to all students, past and present, explaining the differences between Electronic Technicians Association and Evolving Technologies. Further, this letter was to disclose the corporate affiliation between the Wrightco Schools and Evolving Technologies. The Wrightco Schools sent a draft of a letter that it proposed to send, but it was apparently not acceptable because the Division never responded.

**4.** *See* 22 Pa.Code § 73.186(a).

**5.** Specifically, in their letter of September 10, 2001, the Wrightco Schools made the following representation:

> Please be advised that Evolving Technologies Association International, Inc. has elected to register the fictitious name Certifications International. A copy of the time-stamped registration of the fictitious name is attached as Tab A. Accordingly, all references, in printed materials and otherwise, to Evolving Technologies Association International, Inc. and/or ETA *will be replaced* with the name Certifications International by Wrightco private licensed schools in Pennsylvania. It is Wrightco's hope that the use of the fictitious name Certifications International will resolve the concerns of the Panel concerning the use of the acronym ETA.

Reproduced Record Vol. III, 889a (R.R. ——) (emphasis added).

the Wrightco Schools had violated the Act on the basis of conduct that occurred before the September 2001 proposed cure as well as conduct that occurred after the Board's January 2002 closure of the violations, *i.e.,* the conduct described in the Division's April 12, 2002 letters to the Wrightco Schools. The Hearing Panel recommended that the maximum civil penalty for a second violation, *i.e.,* $750,[6] be imposed. Argument was heard by the full Board, and thereafter it issued a final adjudication adopting entirely the proposed decision of the Hearing Panel. The Wrightco Schools then petitioned for this Court's review.

On appeal,[7] the Wrightco Schools assert, first, that there is no evidence in the record to support the Board's finding that the Wrightco Schools reneged on their September 10, 2001 promises to delete "ETA" from their school publications. The only evidence of record showed that unrelated third parties made these representations after September 2001, and their conduct cannot be attributed to Wrightco Schools. Second, the Wrightco Schools assert that it was improper for the Board to hear evidence about the conduct that had been "closed" in accordance with the Board's own regulation in January 2002. Indeed, the Wrightco Schools assert that they had no notice that they would be required to defend against the "closed" violations and

were, therefore, deprived of due process. We consider these issues *seriatim.*

The cornerstone of this appeal is whether there is substantial evidence to support the Board's adjudication. The Board defined the issue before it as whether the Wrightco Schools had misrepresented facts relating to the schools or misled current or prospective students in violation of Section 12(c) of the Act[8] and Section 73.173(a) of Title 22 of the Pennsylvania Code.[9] The Board found, that "Licensees [the Wrightco Schools] were continuing to use the acronym 'ETA' on website and flyer advertisements in April 2002, three months into the six-month monitoring period indicated in the ... January 23, 2002 letter." Board Opinion, Finding of Fact No. 10. Thus, it concluded, based on this finding, that the Wrightco Schools had violated the Act. The question is whether this essential finding of the Board is supported by substantial evidence.

The Board's finding was based upon evidence that in April 2002 the acronym "ETA" was used in connection with the Wrightco Schools on websites of entities identified as Virtual University Enterprise (VUE), People for Progress, and Evolving Technologies Association International, Inc. Four exhibits were specifically cited by the Board in support of Finding of Fact 10:(1) a May 24, 2002 printout of the web-

---

**6.** The June 6, 2002 Orders to Show Cause state that on January 14, 2002, each of the Wrightco Schools paid a $500 civil penalty for violations cited in the August 27, 2001 Notices of Violation, docket Nos. 01–12A through 01–20A, which were resolved by the January 23, 2002 letter from the Division. R.R. 838a, 844a, 850a, 856a, 862a, 868a, 874a, 880a, 886a. Board Opinion at 11.

**7.** In reviewing an agency adjudication, the scope and standard of review is whether constitutional rights have been violated, an error of law committed or whether findings of fact necessary to the adjudication are supported

by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

**8.** 24 P.S. § 6512(c) provides:

Advertising.—The advertising and representations made by any person representing the school or classes shall neither misrepresent any fact relating to the school nor mislead prospective students.

**9.** 22 Pa.Code § 73.173(a) provides:

The advertising and representations made by a person representing the school may neither misrepresent facts relating to the school nor mislead prospective students.

site of Virtual University Enterprise or "VUE"; [10] (2) a January 14, 2003 printout of the website of People for Progress; [11] (3) a March 1, 2001, printout of the website of Evolving Technologies; [12] and (4) a letter from the Division to Brent Wright dated April 12, 2002. [13] These exhibits constitute the substantive evidence used to support the Board's determination that the Wrightco Schools misrepresented the certification testing available to students of the Wrightco Schools. [14]

The Wrightco Schools contend that this evidence shows only that third parties, not the schools, made statements on their websites that associated "ETA" with the Wrightco Schools; accordingly, this evidence does not constitute substantial evidence to support the Board's pivotal finding. We have explained that "the substantial evidence required to support the finding of an administrative agency must be such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Gallagher v. Civil Service Commission of the City of Philadelphia,* 16 Pa. Cmwlth. 279, 330 A.2d 287, 289 (1974). The Wrightco Schools argue that evidence of what other corporations did is not sub-

stantial evidence that the Wrightco Schools made misleading publications. We agree.

The Division concedes that subsequent to January 23, 2002, the only offending publications, *i.e.,* those connecting the Wrightco Schools and ETA, were internet site statements posted by persons other than the Wrightco Schools. However, the Division believes that a relationship between the Wrightco Schools and these third parties can be inferred from the evidence or is self-evident. It claims, for example, that it was "developed at the hearing [that] Wrightco had a relationship with VUE ... which allowed students to take Brent Wright's ETA certification examination through VUE." [15] Board's Brief at 16. Notably, this assertion by the Division is not supported by a citation to the record. The Division maintains that Wrightco, the Wrightco Schools and Evolving Technologies, d/b/a Certifications International, are "inextricably intertwined" so as to render all of them, apparently, subject to regulation under the Act. [16] Board's Brief at 17, n. 10. In other words, by common ownership alone the Division be-

10. Division Ex. 28, R.R. Vol. II, 726a–727a.

11. Division Ex. 30, R.R. Vol. II, 728a–729a.

12. Division Ex. 31, R.R. Vol. II, 730a–731a.

13. Hearing Panel Ex., R.R. Vol. IV, 1260a–1261a. Although relied upon by the Board, it was never admitted at the hearing and, thus, has no probative value.

14. The testimony of the Division's witness, Board administrator Sharon Lane, typified the Division's evidence. Ms. Lane indicated a belief that the Wrightco Schools had control of all the information available on any website mentioning the schools, including Amazon.com and PeopleforProgress. R.R. 507a–513a. It is difficult to see how the Wrightco Schools could have "controlled" Amazon.com, a public company.

15. By "relationship," the Division apparently refers to the business relationship between Wrightco, the parent of the Wrightco Schools, and VUE, pursuant to which students are tested online. Under this logic, depositors doing business with a bank can be held liable for the bank's malfeasance because of their "relationship."

16. The Evolving Technologies website, the Division claims, "touts" a relationship with the Wrightco Schools, and it lists Wrightco's address in Claysburg for contact information. However, "Evolving Technologies Association International Incorporated" is a separate division. As noted by the Wrightco Schools, Evolving Technologies has the right to market its services, and *its* marketing is beyond the Board's regulatory reach.

lieves the acts of one can be assigned to all.

More than inference was required for the Division's theory to be accepted. The Board fails to appreciate the significance of the fact that each corporation owned by Wrightco or by Mr. Wright has a separate legal existence. The Division had to present evidence that would allow the factfinder to pierce the corporate veil between the affiliate corporations.[17] This was necessary before the acts of one corporation owned by Wrightco could be attributed to the Wrightco Schools. No such evidence was offered.

Further, the Division's evidence did not establish that the website postings, found to be offensive by the Board, were "representations made by a person representing the school" as required by the Act and regulations.[18] To the contrary, the record shows that the Wrightco Schools did not author the websites in question and did not control them.[19] Mr. Wright testified, without equivocation, that there was no corporate relationship between Wrightco and VUE. With respect to the People for Progress website, discovered by the Division using an internet search engine, Mr. Wright testified that he learned of the website at the hearing. Indeed, to the best of his knowledge, no employee at the Wrightco Schools had provided information to People for Progress. The third item relied upon by the Board, the website of Evolving Technologies, was dated March 1, 2001, nearly nine months before the Board "closed" its notices of violations by accepting the September 10, 2001 proposal of the Wrightco Schools. In any case, Evolving Technologies is not licensed by the Board, and it did not make any agreement with the Board not to use its own legal name on its website.[20]

■ The Act empowers the Board to enforce its policies, rules and regulations, and to refuse to issue, suspend or revoke a license if it finds that a *licensee* has violated any of the provisions of the Act. 24 P.S. § 6513(b)(1).[21] The Division's evidence

---

17. This Court has set out the factors to be considered in disregarding the corporate form as follows:

> undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud.

*Kaites v. Department of Environmental Resources*, 108 Pa.Cmwlth. 267, 529 A.2d 1148, 1151 (1987). The Division failed to present evidence on any of these factors. *See also Fort Washington Resources, Inc. v. Tannen*, 153 F.R.D. 565, 568 (E.D.Pa.1994); *First Realvest, Inc. v. Avery Builders, Inc.*, 410 Pa.Super. 572, 600 A.2d 601 (1991).

18. The record does not contain any evidence that each of the nine Wrightco Schools, or any one of the nine schools, published misleading information after January 23, 2002, even though the Division issued nine separate licenses and nine separate Notices of Violation and Orders to Show Cause, and levied nine identical but separate fines for previous violations and current violations.

19. The Wrightco Schools assert that the Board's factual findings must be set aside because they were firmly refuted by the Wrightco Schools and it was error of the Board to disregard this evidence capriciously. *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board*, 571 Pa. 189, 812 A.2d 478 (2002). It may have been error, but we need not decide this question since we do not believe the Board's findings are supported by substantial evidence.

20. Finally, it was error for the Board to use a letter written by the Division as substantive evidence to support the critical Finding of Fact No. 10. This letter, in any case, was never actually admitted.

21. 22 Pa.Code § 73.189 provides for the levy of civil penalties in addition to revocation of license for violations of the Act or for operation of a school without being licensed or registered. First violations carry a maximum fine of $500; second violations within three years, $750; and third violations within three years, $1,000.

supports a finding that non-licensed persons, not the Wrightco Schools, made the offending statements after January 23, 2002. Mere benefit to the schools from dissemination of the information by others was irrelevant to the issue identified by the Board,[22] *i.e.*, that the Wrightco Schools continued to use "ETA" in its publications. We hold that the Board's findings that the Wrightco Schools violated the Act after January 23, 2002 are not supported by substantial evidence.

The next issue we consider is whether evidence of conduct that preceded the Board's January 23, 2002 acceptance of the Wrightco Schools' cure was relevant to the Division's enforcement action and, thus, admissible. The Wrightco Schools argue that the Board violated its own regulation, which provides that once the Board's Review and Recommendation Panel accepts a private school's proposed cure, the matter is closed. 22 Pa.Code § 73.186.[23]

The Board argues that the January 23, 2002 closure was contingent upon the Wrightco Schools' continued compliance. A "conditional closing" springs, in the Board's opinion, from the caution in the January 23, 2002 letter that the Division would "monitor" the Wrightco Schools for six months, "raising the very clear inference that continued compliance is a condition of the closing of the misrepresentation issue." Board Opinion at 9.

■ The Board's letter of January 23, 2002 warned of continuing surveillance, but nowhere did it assert that a violation of the Wrightco Schools' promised cure would cause a revocation of the closure. The mere lapse of time did not reanimate the Board's ability to issue orders to show cause on violations that had been closed by agreement. In truth, the Board's warning in its January 23, 2002 letter was of no special significance. The Board has the statutory responsibility to monitor the conduct of all licensed private schools on an on-going basis to ensure compliance with the Act, regardless of the number of previous violations by a licensee and regardless of any prior settlement reached on violations. The promise to monitor the Wrightco Schools for six months after January 23, 2002 does not imply a conditional closure of the violations; it merely reiterates the ongoing and obvious duty of the Board to regulate licensed private schools.

* * *

(c) Within the cure period, the school or admissions representative shall provide to the Board staff a sworn or verified written statement stating that the violation has been cured or did not exist and the facts which establish the same.... At the direction of the panel, Board staff will *either* notify the school in writing that *the statement is accepted and that the complaint is closed or* that the *statement is rejected and that the school should show cause* why enforcement action should not be taken.

22 Pa.Code § 73.186 (emphasis added). Thus, had the Board staff rejected the September 2001 statement of the Wrightco Schools, it could have issued orders to show cause to the schools.

---

**22.** The Division may suspect that the Wrightco Schools are related in some way to the website entities, but mere suspicion may never be substituted for the standard of proof requiring findings of the Board to be made upon material, relevant and persuasive evidence such that a reasonable mind would accept as adequate to support those findings. *Cohen v. State Board of Medicine*, 676 A.2d 1277, 1279 (Pa.Cmwlth.1996).

**23.** It provides in pertinent part:
(a) When the review and recommendation panel directs staff to initiate enforcement proceedings against a school or admissions representative, staff shall prepare and send an appropriate notice of violation.... The violation shall be cured within the period specified in the notice or within 14–calendar days from the mailing date of the notice when a period is not specified.

We agree with the Wrightco Schools that the Board was bound by its regulation at 22 Pa.Code § 73.186. The Board closed the alleged violations of the Wrightco Schools by accepting their proposed cure. Under its regulation, once the Board accepted the Wrightco Schools' cure of the violations caused by their pre-September 2001 acts, it was too late for the Board to initiate an enforcement action to sanction those same specific acts. It was error for the Board to do so.

This is not to say that the fact of the January 23, 2002 settlement between the Wrightco Schools and the Board could not be used in any way in an enforcement action. The Wrightco Schools each paid a fine of $500 in connection with the closure of the pre-September 2001 violations.[24] We understand that the Wrightco Schools neither admitted nor denied that their publications were misleading or violated the Act when they paid that fine. Nevertheless, they agreed to change their conduct and to pay a penalty, and this establishes the fact of a violation. Accordingly, had the Division proven that the Wrightco Schools violated the Act by conduct subsequent to January 23, 2002, the Board would have had the ability to impose a fine of $750, which is the penalty for second violations.[25] The problem here is that the Board allowed the Division to use the same conduct to prove both the first and second violations.

For these reasons, we reverse the order of the Board.[26]

**24.** The Wrightco Schools acknowledged the earlier violations and paid civil penalties in January 2002. The Act only permits the levying of a civil penalty at an increased amount over the initial penalty for a second or subsequent offense within three years of the first offense. This criterion has not been met under the facts of this case because a second violation was not proven by the Division.

**ORDER**

AND NOW, this 19th day of April, 2004, the order of the Department of Education, State Board of Private Licensed Schools dated May 22, 2003 in the above-captioned matter is hereby reversed.

**25.** See 22 Pa.Code § 73.189.

**26.** Because the issue of the lack of substantial evidence is dispositive of this case, we will not address the Licensee's violation of due process claim.