# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

B&R Resources, LLC and        :
Richard F. Campola,        :
       :
       Petitioners        :
       :
       v.        :   No. 1234 C.D. 2017
       :   Argued: February 5, 2018
       :
Department of Environmental        :
Protection,        :
       :
       Respondent        :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
       HONORABLE CHRISTINE FIZZANO CANNON, Judge
       HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION BY**
**SENIOR JUDGE COLINS**        **FILED: March 15, 2018**

This matter is a petition for review of an adjudication of the Environmental Hearing Board (EHB) that dismissed the appeal of B&R Resources, LLC (B&R) and Richard F. Campola (Campola) of a Department of Environmental Protection (DEP) administrative order (the Administrative Order) issued pursuant to Section 3253 of the oil and gas statutes enacted by Act 13 of February 14, 2012, P.L. 87 (the 2012 Oil and Gas Act), 58 Pa. C.S. § 3253. The Administrative Order required B&R and Campola (collectively, Petitioners) to plug 47 abandoned oil and gas wells in Erie County and Crawford County, Pennsylvania (the Wells). For the reasons set forth below, we reverse and remand this matter to the EHB.

B&R is an Ohio limited liability company engaged in oil and gas exploration activities in Pennsylvania. (EHB Adjudication Finding of Fact (F.F.) ¶2; Stipulation ¶2, Reproduced Record (R.R.) at 670a.) Campola purchased B&R in July or August 2011 and is B&R's sole member and managing member. (EHB Adjudication F.F. ¶¶4-6; Stipulation ¶4, R.R. at 671a.) At the time that Campola purchased B&R, B&R had an inventory of approximately 157 to 160 wells in Pennsylvania, consisting of 67 producing wells and 90 or more non-producing wells. (EHB Adjudication F.F. ¶17; Hearing Transcript (H.T.) at 14-15, R.R. at 690a-691a.) Between August 2011 and September 2012, B&R put seven of the non-producing wells back into production. (EHB Adjudication F.F. ¶20; H.T. at 21-22, 41, R.R. at 697a-698, 717a.)

In December 2011, DEP notified Campola by email that a number of B&R's wells appeared to be abandoned and inquired what B&R intended to do with respect to those wells. (EHB Adjudication F.F. ¶30; DEP Ex. C, R.R. at 472a.) Four times between August 2012 and March 2014, DEP sent Campola notices of violations with respect to some of the Wells stating they were abandoned wells and that B&R was required to plug them. (EHB Adjudication F.F. ¶¶34-36, 38-39; DEP Exs. B, E, G, H, R.R. at 458a-470a, 476a-480a, 484a-488a, 490a-493a.) Campola received these notices and understood that DEP was advising him that B&R was required to plug those wells. (EHB Adjudication F.F. ¶¶34, 37, 40; H.T. at 31-35, 38-39, R.R. at 707a-711a, 714a-715a; DEP Exs. F, I, R.R. at 482a, 495a.)

On September 12, 2014, DEP sent Campola a notice of violations with a list of the Wells, advising that the Wells were abandoned, advising that B&R was required under the 2012 Oil and Gas Act to plug the Wells, and requesting a written response stating when B&R would comply. (EHB Adjudication F.F. ¶41; DEP Ex.

2

J, R.R. at 497a-501a.) Campola received this notice and in response sent DEP a letter asserting that DEP had "singled out" B&R, that B&R was "not in any position to plug any wells at this time," and that "B&R's intent was never to plug the wells, but to produce them." (EHB Adjudication F.F. ¶42; DEP Ex. K, R.R. at 578a.)[1] In this letter, Campola also requested that DEP "allow us to fix problems without DEP interference." (EHB Adjudication F.F. ¶42; DEP Ex. K, R.R. at 578a.) On June 4, 2015, DEP again sent Campola a notice of violations with respect to the Wells. (EHB Adjudication F.F. ¶43; DEP Ex. L, R.R. at 580a-657a.) Campola received this notice and responded that B&R had difficulties that affected its ability to bring the Wells into production, but did not commit to plugging any of the Wells. (EHB Adjudication F.F. ¶44; DEP Ex. M, R.R. at 659a.) DEP also informed Campola in meetings and telephone conversations in 2014 and 2015 that the Wells were abandoned and must be plugged. (EHB Adjudication F.F. ¶¶46-49; H.T. at 115-18, R.R. at 791a-794a.) DEP requested in at least one of these meetings that Campola provide a schedule for bringing the Wells into compliance, but Campola did not provide any such schedule. (EHB Adjudication F.F. ¶50; H.T. at 55, 116, 118, R.R. at 731a, 792a, 794a.)

B&R did not plug any of the Wells following the notices of violations or return any of the Wells to production. (EHB Adjudication F.F. ¶¶14, 16; Stipulation ¶¶6, 9.) Campola, as B&R's managing member, made all operational decisions for B&R, including decisions on which wells to produce and decisions on whether to plug wells. (EHB Adjudication F.F. ¶7; Stipulation ¶¶12-13, R.R. at 671a; H.T. at 23, R.R. at 699a.) Campola was involved in a serious car accident in

---

[1] Under the 2012 Oil and Gas Act, an operator is not required to plug inactive wells that it intends to put in production in the future if it obtains a DEP grant of inactive status. 58 Pa. C.S. §§ 3203, 3214, 3220(a). Neither Petitioners nor DEP discuss whether B&R sought inactive status for any of the Wells.

January 2012, and suffered a stroke in August 2014 for which he was hospitalized for approximately one month. (EHB Adjudication F.F. ¶¶32, 60-61; Stipulation ¶¶17, 23-24, R.R. at 673a-674a.)

On June 22, 2015, DEP issued the Administrative Order requiring B&R and Campola to plug the Wells. The Administrative Order found that the Wells were abandoned wells, that B&R was required to plug the Wells because it was the owner and the operator of the Wells and that Campola "personally participated" in B&R's failure to plug the Wells and was an operator of the Wells. (Administrative Order Findings ¶¶C, E, H, I, K, R.R. at 2a-3a.)

Petitioners appealed the Administrative Order to the EHB, contending that it was premature and unwarranted because the Wells were not abandoned wells and that it could not apply to Campola because he was not an operator of the Wells and was not liable for B&R's obligations on a participation theory of liability. Following discovery, Petitioners filed a motion for partial summary judgment seeking judgment as a matter of law that the Administrative Order could not apply to Campola. On July 15, 2016, the EHB granted Petitioners' motion insofar as it sought dismissal of DEP's claim that Campola was liable as an operator of the Wells, but denied Petitioners' motion as to Campola's liability under the participation theory on the grounds that there were disputed issues of material fact.

Prior to the EHB's evidentiary hearing on Petitioners' appeal, Petitioners and DEP stipulated to a number of facts in the appeal. In this stipulation, Petitioners admitted that all of the Wells were abandoned wells under the 2012 Oil and Gas Act, that B&R was required to plug the Wells under Section 3220(a) of the 2012 Oil and Gas Act, 58 Pa. C.S. § 3220(a), and that B&R had not plugged any of the Wells. (Stipulation ¶¶5-9, R.R. at 671a.) The parties also stipulated that

4

Campola is not the permittee of any of the Wells and is not an operator of the Wells under the 2012 Oil and Gas Act. (*Id.* ¶¶10-11, R.R. at 671a.) On November 9, 2016, the EHB held a one-day evidentiary hearing on the only remaining issue in the appeal, whether Campola was liable for B&R's failure to plug the Wells under the participation theory.

At the evidentiary hearing, DEP introduced in evidence the notices of violations that it sent between 2011 and 2015, Campola's responses, and testimony concerning its meetings with Campola. Campola testified that he made a business decision that B&R would spend its funds on its producing wells, on bringing wells into production, and on other expenses, and that it would not spend any funds to plug any of the Wells. (H.T. at 52-54, 70-71, 101-06, R.R. at 728a-730a, 746a-747a, 777a-782a.) Petitioners contended that Campola could not be liable on the participation theory because B&R did not have sufficient financial resources to plug the Wells. Petitioners introduced in evidence B&R profit and loss statements prepared by Campola for the years 2011 through 2014. (H.T. at 80-82, 88, R.R. at 756a-758a, 764a.) This evidence showed that B&R's profits for the years 2011 through 2014, net of money that it paid out for expenses, totaled $154,578. (EHB Adjudication F.F. ¶63; H.T. at 82-86, 98-99, 101, 106-07, R.R. at 758a-762a, 774a-775a, 777a, 782a-783a.) Campola testified that he paid out $23,000 of B&R's funds to himself in 2013. (H.T. at 86, R.R. at 762a.) The profit and loss statements showed that between 2011 and 2014, B&R also spent approximately $46,000 on legal fees and approximately $80,000 on line repair costs. (EHB Adjudication F.F. ¶¶64, 66; H.T. at 99-103, R.R. at 775a-779a.) Campola testified that it costs $20,000 to $25,000 to plug a well. (H.T. at 71, 74-75, R.R. at 747a, 750a-751a.) Petitioners did not introduce in evidence any profit and loss statement for 2015, any balance

5

sheets, or any appraised value of B&R's assets or mineral rights. Petitioners also argued that B&R's access to a number of its wells was impeded by disputes with landowners. Only one of the 47 Wells was affected by these problems, however, and DEP introduced evidence that this landowner dispute prevented B&R from producing the well, but did not prevent B&R from plugging it. (H.T. at 57-58, R.R. at 733a-734a; Certified Record Item 29, Wolford Affidavit.)

On August 9, 2017, following post-hearing briefs of the parties, the EHB issued its adjudication finding that Campola was liable for B&R's failure to plug all 47 of the Wells and dismissing Petitioners' appeal of the Administrative Order. The EHB held that under this Court's decision in *Kaites v. Department of Environmental Resources*, 529 A.2d 1148 (Pa. Cmwlth. 1987), and its decision in *Whitemarsh Disposal Corp. v. Department of Environmental Protection*, (EHB Docket No. 97-099-L filed March 20, 2000), 2000 EHB 300, 2000 WL 305765, Campola was personally liable under the participation theory because he had knowledge of the violations, intentionally neglected to remedy the violations and had the authority and duty to address the violations.

The EHB found that Campola had actual knowledge, from the multiple notices that he received from DEP and his meetings with DEP, that B&R was required to plug the Wells and that B&R was in violation of the 2012 Oil and Gas Act. (EHB Adjudication, Discussion at 14-17.) The EHB concluded that Campola's conduct constituted intentional neglect because the evidence showed that Campola made no effort to have B&R plug any of the Wells, actively avoided and resisted addressing the violations when they were brought to his attention, and "sought to hold off" DEP's efforts to have the Wells plugged. (*Id.* at 18-21.) The EHB rejected Campola's argument that his failure to act was not intentional because B&R lacked

the financial resources to plug all of the Wells, concluding that "[w]hile B&R had some financial difficulties, it also had some financial resources that Mr. Campola decided to spend for other purposes rather than correct the violations." (*Id.* at 20-21.) The EHB made no finding concerning the cost of plugging a well and no finding that Campola's testimony on this subject was or was not credible.

The EHB also rejected Campola's arguments that landowner problems and his health problems excused the failure to plug the Wells, finding that the landowner disputes did not prevent B&R from plugging any of the Wells and that Campola's health problems interfered with his ability to act for only a limited period of time. (EHB Adjudication, Discussion at 17, 19-20.) The EHB found that Campola had the authority and duty to address the violations because he was the sole member and managing member of B&R, made all operational decisions for B&R, including decisions on responding to DEP notices of violations and decisions on spending B&R's funds, and was the only person who could authorize B&R to address the violations. (*Id.* at 21-22.)

In this appeal, Petitioners argue that Campola cannot be individually liable for B&R's failure to plug the Wells because his involvement consisted of inaction and that the EHB imposed liability on Campola based on his status as sole owner and manager of B&R, rather than his own conduct. Petitioners also argue that if the Court holds that participation theory liability can be based on intentional refusal to act, Campola's liability must be limited to the number of wells that B&R could have plugged if its resources had been used to plug the Wells. We address each of these issues in turn.[2]

---

[2] This Court's review of the EHB's adjudication is limited to determining whether the EHB violated constitutional rights or committed errors of law, or whether any necessary findings of fact are not supported by substantial evidence. *Kiskadden v. Pennsylvania Department of Environmental Protection*, 149 A.3d 380, 387 (Pa. Cmwlth. 2016); *Herzog v. Department of*

Under Pennsylvania law, a corporate officer can be liable in tort for his own wrongful conduct on behalf of the corporation, even though the corporation is not a sham and there is no basis for piercing the corporate veil. *Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 89-90 (Pa. 1983); *Francis J. Bernhardt, III, P.C. v. Needleman*, 705 A.2d 875, 878 (Pa. Super. 1997); *Bank of Landisburg v. Burruss*, 524 A.2d 896, 901 (Pa. Super. 1987). This basis of individual liability, known as the participation theory, is predicated on the corporate officer's own actions and participation in the corporation's wrongful conduct, rather than the corporation's status and his relationship to the corporation. *Wicks*, 470 A.2d at 89-90. In *Wicks*, our Supreme Court explained:

> "The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the corporation in committing it, unless he specifically directed the particular act to be done or participated, or cooperated therein." … Liability under this theory attaches only where the corporate officer is an actor who participates in the wrongful acts. Therefore, corporate officers may be held liable for misfeasance. Nevertheless, corporate officers and directors may not be held liable for mere nonfeasance. Thus, the

---

*Environmental Resources*, 645 A.2d 1381, 1387 (Pa. Cmwlth. 1994). Resolution of conflicts in the evidence and questions of witness credibility and evidentiary weight are within the EHB's exclusive discretion, and this Court must, in determining whether substantial evidence exists, view the record in the light most favorable to the party that prevailed before the EHB, and give that party the benefit of all reasonable inferences that can be drawn from the evidence. *Kiskadden*, 149 A.3d at 387; *Herzog*, 645 A.2d at 1387. The issues of whether the participation theory can apply to intentional inaction and whether it can apply to inaction where the company lacked the financial ability to comply, however, are issues of law. *See Kaites*, 529 A.2d at 1152. Those issues are therefore subject to this Court's plenary, *de novo* review. *Department of Environmental Protection v. Cumberland Coal Resources, LP*, 102 A.3d 962, 970 (Pa. 2014).

> mere averment that a corporate officer should have known the consequences of the liability-creating corporate act is subject to a motion to strike for impertinence and proof of that averment alone is insufficient to impose liability.

*Id.* at 90 (quoting 3A Fletcher, *Cyclopedia of the Law of Private Corporations* § 1137 (1975)) (citations omitted).

The participation theory applies to officers of limited liability companies. *Commonwealth ex rel. Corbett v. Manson*, 903 A.2d 69, 71, 73 (Pa. Cmwlth. 2006). Although it was initially adopted in tort actions, this Court has held that the participation theory applies to statutory violations and is a basis for imposition of individual liability on company officers in DEP administrative orders. *Id.* (limited liability company officer held liable for civil penalties for company's violations of consumer protection statute under participation theory); *Herzog v. Department of Environmental Resources*, 645 A.2d 1381, 1392-93 (Pa. Cmwlth. 1994) (corporate representative was liable for environmental violations and was subject to DEP compliance order under participation theory); *see also Kaites*, 529 A.2d at 1151-52 (analyzing corporate officer liability for environmental violation under participation theory but holding that requirements were not satisfied).

Petitioners and *amicus curiae* Pennsylvania Independent Oil & Gas Association (Amicus) contend that the participation theory requires proof that the defendant committed an affirmative act and cannot apply where his conduct consisted of inaction, no matter how knowing, intentional and deliberate the failure to act may have been. We do not agree.

The law is clear that a defendant is not liable under the participation theory merely because of his status and responsibilities as a company officer or because he is the sole individual directing the company's actions. *Longenecker v. Commonwealth*, 596 A.2d 1261, 1263 (Pa. Cmwlth. 1991); *Kaites*, 529 A.2d at

1151-52. The law is also clear that a company officer is not liable on the participation theory for failure to stop or correct conduct of other company employees where he had no actual knowledge of that conduct. *Wicks*, 470 A.2d at 90; *Shay v. Flight C Helicopter Services, Inc.*, 822 A.2d 1, 19-20 (Pa. Super. 2003).

These principles do not, however, require that the courts exempt intentional and knowing wrongdoing of corporate officers from liability simply because their conduct consists of deliberate inaction. In *Wicks*, the Supreme Court did not hold that inaction can never be sufficient to support participation theory liability. Rather, the Court held that "<u>mere</u> nonfeasance" is not sufficient. 470 A.2d at 90 (emphasis added). The Court, moreover, gave as an example of "mere nonfeasance" a claim based on the fact that the corporate officer "should have known" of the wrongful act. *Id.* The conduct that the Court held sufficient to support participation theory liability in *Wicks* consisted of directing that work on a development proceed with knowledge that construction of the development created an unreasonable risk of damage to the plaintiffs' property. *Id.*

This Court has held that intentional and knowing inaction can be sufficient to support participation theory liability for a statutory violation. In *Kaites*, this Court analyzed the participation theory in the context of an environmental violation and held it requires proof that the corporate officer committed "intentional neglect or misconduct" that contributed to the violation. 529 A.2d at 1152.

Petitioners and Amicus argue that the Court's language in *Kaites* concerning intentional neglect should be disregarded as dicta. Statements in a court's opinion that are not essential to its decision are dicta and have no precedential value. *Valley Township v. City of Coatesville*, 894 A.2d 885, 889 (Pa. Cmwlth. 2006); *City of Lower Burrell v. City of Lower Burrell Wage & Policy Committee*,

795 A.2d 432, 437 n. 7 (Pa. Cmwlth. 2002). The Court in *Kaites* found that the corporate officer was not liable because the only evidence on which the participation theory was based consisted of his status and duties as president and chief executive officer of the corporation. 529 A.2d at 1151-52. The Court therefore <u>could</u> have decided *Kaites* without ruling that intentional neglect was sufficient to support liability. Instead, however, the Court repeatedly discussed intentional neglect as a standard that satisfies the requirements of the participation theory in concluding that the corporate officer was not liable and noted that there was evidence that the corporate officer had twice attempted to correct the violation. *Id.* The Court in *Kaites* ruled that the corporate officer was not liable under the participation theory because "there is no specific evidence demonstrating [p]etitioner's intentional neglect or misconduct which would support imposing individual liability on him" and because there was a "lack of sufficient evidence demonstrating that [p]etitioner has contributed, by personal actions of neglect or misconduct, to the existing nuisance." *Id.* at 1152. In addition, the Court rejected the argument that individual liability should be imposed based on the defendant's corporate responsibilities alone on the grounds that "under Pennsylvania law, the public interest will not be violated by requiring specific evidence of acts of intentional neglect or misconduct before imposing individual liability on a corporate officer for abating a public nuisance." *Id.* Given its central role in the Court's reasoning, the discussion in *Kaites* of intentional neglect as a basis for liability under the participation theory cannot be casually dismissed as dicta.

Moreover, in *Manson*, this Court specifically upheld liability under the participation theory for intentional and knowing failure to act. In that case, Manson, the chief executive officer of Unclaimed Freight Company, LLC, was found liable

11

at trial for the company's consumer protection law violations. This Court affirmed the trial court's judgment against him on the ground that proof that he knew that the company was violating the statute and did not stop the violations was sufficient to establish liability under the participation theory. 903 A.2d at 73. The Court explained:

> Unclaimed Freight took orders and received funds from customers for merchandise when it knew or should have known that the merchandise would not be delivered to those customers. Manson was aware of this practice, controlled the company's day-to-day operations and the company's deceptive practice continued under his control. Thus, Manson participated in or cooperated in the wrongful act.

*Id.*

None of the cases cited by Petitioners or Amicus holds that a corporate or limited liability company officer cannot be held personally liable on the participation theory for intentional and knowing refusal to act. To the contrary, in those cases where participation theory liability has been rejected, there was no evidence that the individual had knowledge of the company's wrongful conduct and made a choice to not take action. *See Chester-Cambridge Bank & Trust Co. v. Rhodes*, 31 A.2d 128, 131-32 (Pa. 1943) (corporate officers had no knowledge of or involvement in the breach of trust, which was a transfer of property by other employees of the corporation); *Cohen v. Maus*, 147 A. 103, 104 (Pa. 1929) (directors of corporation were not individually liable "for a conversion of property about which they knew nothing, merely because, if they had examined the books of the corporation, they might have ascertained that the conversion had taken place"); *Swentzel v. Penn Bank*, 23 A. 405, 415 (Pa. 1892) (bank directors not liable for fraud committed by others of which they had no knowledge); *Longenecker*, 596 A.2d at

12

1262-63 (only basis on which trial court imposed liability was defendant's status as sole officer and shareholder, defendant was not liable because "there is no evidence that Longenecker intentionally neglected the properties in question"); *Shay*, 822 A.2d at 19-20 (corporation president not liable on participation theory because he had no involvement in tortious act, which was committed by a mechanic, and had no knowledge that the mechanic's work was done improperly); *Brindley v. Woodland Village Restaurant, Inc.*, 652 A.2d 865, 870 (Pa. Super. 1995) (no evidence that the condition of the premises on which tort liability was based "was a result of an active, knowing participation by" individual defendants); *Hager v. Etting*, 408 A.2d 856, 858-59 (Pa. Super. 1979) (tort claim was for failure to discover and warn of dangerous condition of land).[3]

Finally, even if this Court's precedents did not resolve the issue, adoption of an absolute rule that intentional and knowing inaction cannot support participation theory liability could create the anomalous result of deterring compliance with statutory obligations. If intentional and knowing refusal to take action were shielded from individual liability, a corporate officer could be placed at greater risk of personal liability by taking affirmative steps to comply with the law, if those efforts proved unsuccessful, than if he chose to have his company ignore its

---

[3] The remaining cases argued by Petitioners and Amicus either held that the requirements of the participation theory were met, *see Roethlein v. Portnoff Law Associates, Ltd.*, 25 A.3d 1274, 1280 (Pa. Cmwlth. 2011) (*en banc*) (corporation's principal held liable on participation theory), *rev'd on other grounds*, 81 A.3d 816 (Pa. 2013); *Commonwealth ex rel. Corbett v. Snyder*, 977 A.2d 28, 44-48 (Pa. Cmwlth. 2009) (corporation employees held liable on participation theory); or did not rule on whether liability could be imposed on the participation theory. *See Nordi v. Keystone Health Plan West Inc.*, 989 A.2d 376, 384-85 (Pa. Super. 2010) (absence of affirmative conduct defeated underlying cause of action against company for failure to pay insurance claim, not participation theory liability); *Gordon v. Pennsylvania Blue Shield*, 548 A.2d 600 (Pa. Super. 1988) (absence of affirmative conduct defeated cause of action against corporation and no claim was asserted on participation theory or against any corporate agent).

obligations. Petitioners' and Amicus's argument that intentional inaction can never support participation theory liability must therefore also be rejected as a matter of public policy.

Petitioners' argument that the EHB imposed liability on Campola based on his status as owner and manager of B&R likewise fails. The EHB referred to Campola's status as sole manager, owner and employee several times in its analysis, stating that because "all B&R Resources' activities were conducted exclusively by Mr. Campola[,] [i]t is difficult therefore to speak of actions by B&R Resources as independent of Mr. Campola and vice versa," that Campola was "the only actor on behalf of the company" and "in essence his actions are B&R Resources' actions," and that "he alone managed and controlled the Abandoned Wells." (EHB Adjudication, Discussion at 12 n.1, 20, 22.) The EHB, however, did not find that Campola was liable by virtue of that status.

Rather, the EHB based its conclusion that Campola was liable on the participation theory on its factual determinations that he knew of B&R's obligation to plug the Wells, that he made a decision that B&R would not plug any of the Wells, and that he had B&R spend its financial resources for purposes other than complying with DEP's directions to plug the Wells. (EHB Adjudication, F.F. ¶¶7, 34-44, 46-50, 53, 64-66, Discussion at 14-21.) Those findings concerning Campola's knowledge and conduct are supported by the record. (DEP Exs. B-C, E-M, R.R. at 458a-470a, 472a, 476a-480a, 482a, 484a-488a, 490a-493a, 495a, 497a-501a, 578a, 580a-657a, 659a; H.T. at 23, 31-35, 52-55, 103-04, 115-19, R.R. at 699a, 707a-711a, 728a-731a, 779a-780a, 791a-795a; Stipulation ¶¶12-13, R.R. at 671a.)

14

Petitioners also contend that liability cannot be imposed on Campola for wells that B&R lacked the financial resources to plug. This argument is meritorious.[4]

A corporate or limited liability company officer is liable for a statutory violation under the participation theory only if there is a causal connection between his wrongful conduct and the violation. *Kaites*, 529 A.2d at 1152 (corporate officer could not be liable for environmental violation absent "sufficient evidence demonstrating that [he] has contributed, by personal actions of neglect or misconduct," to the violation). Here, B&R's failure to plug each of the 47 Wells constituted separate violations of Section 3220(a) of the 2012 Oil and Gas Act, not a single unitary violation. (*See* EHB Adjudication at 1, F.F. ¶¶14-15, 65, Conclusions of Law ¶¶7-11.) There was no claim or evidence that failure to plug one of the Wells had any effect on the condition of any of the other Wells or the violations with respect to the other Wells.

Campola's wrongful conduct found by the EHB consisted of an intentional decision that B&R would not plug the Wells and that its financial resources would be used for purposes other than plugging the Wells. Such conduct can only have a causal effect if B&R had an ability to plug those Wells. Because Campola is individually liable only for those violations to which his conduct contributed, he can therefore be liable only for those wells that B&R could have plugged if he had undertaken to bring B&R into compliance with DEP's directives.

---

[4] Contrary to DEP's contention, Petitioners did not waive this argument. Petitioners argued before the EHB that B&R did not have sufficient financial resources to plug all of the Wells and that Campola could not be liable on the participation theory if compliance was impossible, and Petitioners introduced evidence of B&R's financial condition and the cost of plugging a well. (Petitioners' EHB Post-Hearing Br. at 2, 18, 20-23, R.R. at 847a, 863a, 865a-868a; H.T. at 74-75, 80-86, 88, 98-101, 106-07, R.R. at 750a-751a, 756a-762a, 764a, 774a-777a, 782a-783a.)

The EHB did not find that there was any possibility that B&R could have plugged all 47 of the Wells or even a high percentage of the Wells. The EHB held only that B&R had "some financial resources that Mr. Campola decided to spend for other purposes rather than correct the violations." (EHB Adjudication, Discussion at 20-21) (emphasis added). Because there was no showing or finding that Campola's decision that B&R would not plug the Wells contributed to the failure to plug all 47 Wells, the EHB's ruling that Campola is liable for all 47 Judges cannot stand.

The EHB did not make any finding as to how many of the Wells B&R could have plugged, if any, nor did it make sufficient factual findings from which such a determination can be made. Notably, although Campola testified concerning the cost of plugging a well, the EHB made no finding as to the credibility of this testimony. Remand to the EHB is therefore required for the EHB to adjudicate the extent of Campola's liability, if any.

Accordingly, we reverse the EHB's dismissal of Campola's appeal and its holding that Campola is liable for B&R's statutory obligation to plug all 47 of the Wells. Because the EHB's findings are insufficient, we remand this matter to the EHB for additional findings of fact as to how many, if any, of the Wells could have been plugged if Campola had caused B&R to make reasonable efforts to plug the Wells and for an adjudication of Campola's liability in accordance with those findings.

_____
**JAMES GARDNER COLINS, Senior Judge**

16

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

B&R Resources, LLC and
Richard F. Campola,

        Petitioners

        v.

Department of Environmental
Protection,

        Respondent

:
:
:
:
:
:
:
:
:
:
:
:
:
:

No. 1234 C.D. 2017

## **O R D E R**

AND NOW, this 15th day of March, 2018, the order of the Environmental Hearing Board (EHB) in the above-captioned matter is REVERSED. This matter is REMANDED to the EHB for further proceedings consistent with this opinion.

Jurisdiction relinquished.

**_____**
**JAMES GARDNER COLINS, Senior Judge**